[Civ. No. 10638. Third Dist. July 19, 1963.]

DOLLIE M. BROWN, Petitoner, v. THE SUPERIOR COURT OF BUTTE COUNTY, Respondent; JACK C. FOLEY, Real Party in Interest.

Merlo & Blackstock, A. John Merlo and Daniel V. Blackstock for Petitioner.

No appearance for Respondent.

Raymond A. Leonard, Peart, Baraty & Hassard and Alan Bonnington for Real Party in Interest.

PIERCE, P. J.—We granted a rehearing in this case for the following reason:

The opinion deals with the correctness of respondent trial court's ruling in a malpractice action denying discovery to plaintiff by interrogatories of the transactions at a certain meeting of doctors with defendant and his attorney. The original opinion not only disposed of specific questions of discoverability now raised. It also suggested the extent and limits of future discovery procedures open to plaintiff.[1] The

---

[1] This was obedient to that portion of the decision in *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], where

suggestion was indefinite as to the nature and extent of these procedures; necessarily so since the ultimate wording and fate of a bill pending before the Legislature amending Code of Civil Procedure section 2016 and adding section 2036 was then unknown. The bill, three times amended, passed and has been signed by the Governor as chapter 1744, Statutes 1963. In its adopted form it requires no revision of our views but permits us to discuss the further avenues of discovery available in this litigation without wondering whether our expressions would become vestigial before the remittitur. We will discuss below the new legislation in its relation to this controversy.

Petitioner served interrogatories on the doctor-defendant real party in interest pursuant to Code of Civil Procedure section 2030 and designated also Raymond A. Leonard, defendant's attorney, as one of the persons to answer said interrogatories. Defendant moved to quash. The grounds were that the interrogatories called for information protected (1) under the attorney-client privilege and (2) by the "work product" rule. Respondent court denied the motion as to some of the questions, granted it as to others. The prohibited questions demanded information regarding a certain meeting between defendant, defendant's attorney, a committee of doctors and others at which matters relevant to plaintiff's complaint were discussed.

 The writ petitioned for here is an appropriate procedure to test the trial court's rulings and we issued an order to show cause for the reason that the questions have novelty. (*Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185 fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].)

The petition alleges:

". . . The questions quashed concerned what occurred at a Butte County Medical meeting, and the answers thereto are necessary so that Plaintiff can adequately cross-examine Dr. Jack C. Foley and also learn the opinion of the experts who heard the facts as presented by Dr. Foley. It is almost impossible for Plaintiff to obtain expert testimony in any other manner because of the notorious declination of one medical doctor to testify against another."

The petition has attached to it the memorandum of the trial

the Supreme Court at pages 382-383 adjures trial and appellate courts to serve and speed the salutary purposes of discovery by charting a course to accomplish at least a partial discovery when the means originally invoked by the party seeking discovery must be denied.

court and the interrogatories in question. It does not contain the evidence before the trial court when the motion was heard. Real party in interest has supplied that omission. Attached to his memorandum of points and authorities is the affidavit of Raymond A. Leonard, attorney for defendant Foley. There was no counteraffidavit. The trial court's memorandum opinion was also furnished us.

From the affidavit and memorandum we learn that the meeting mentioned in the petition had the origin and purpose as follows:

 A policy of malpractice insurance insuring defendant physician, himself a member of the Butte County Medical Society, was issued under a master plan covering said members, or some of them, generally. The insurer, by the terms of the plan, furnished an attorney to represent the insured doctor in connection with any claim or suit for malpractice. The society, also by the policy terms, was required to name a committee of doctors. When a suit was filed it was the function of said committee to meet with the insured doctor and his attorney, to hear the former's version of the litigated accident, to interrogate him, review the other evidence, discuss, advise, and make recommendations to the attorney, thus assisting him in an understanding of the case, in evaluating it for settlement, and in preparation for trial.

Under the policy the insured is required to cooperate with the insurer and with the committee. The insurer agrees not to settle any claim without the consent of the insured or the committee, and the insurer must defend any claim or suit at the desire of the insured and the committee.

At the meeting held in this case, called by Mr. Leonard, said attorney was present, also a representative of the insurance company. The members of the doctor-committee were present. The memorandum of the trial court states "[t]hat information was furnished to said committee from the confidential reports of the investigator for said insurance company and from the statements of Dr. Foley acquired pursuant to the provisions of the policy. Further, that Dr. Foley was present for a short time to explain and further expand on the information in his report to the insurance company and his attorney and to answer questions in connection therewith. . . . That after the medical society meeting all information adduced at said meeting was turned over and delivered to [the attorney] for the purpose of assisting in the defense of the claim."

It was alleged in Mr. Leonard's affidavit that the transactions at the meeting were for the purpose of providing the attorney with information to be used by him in evaluating and defending plaintiff's claim and to determine whether it should be compromised. It is stated: "That all statements made were intended to be, and were, in fact, confidential communications between the attorney and client and all information obtained at said committee meeting was . . . for the purpose of providing the attorney with information and evidence for the proper defense of said claim and was given to said attorney in the course of his professional employment."

There were 56 interrogatories proposed. The court ordered defendant to answer questions 1-16, 20-30, 50-56, and that portion of the order is not challenged by defendant. Since these proceedings were instituted, he has also stipulated that certain questions not ordered by the court to be answered will be answered. These are questions 36, 38, 45 and 46. Questions 1-16 relate to matters other than the transactions during the meeting in question. Questions 20-30 relate to the time, date, names, residences and professional addresses of the doctors present; also their specialties, if any. Questions 36, 38, 45 and 46 seek the names of lay persons present. Questions 50-56 seek information as to whether plaintiff herself was present and whether she gave a statement; if so, its whereabouts.

The questions to which defendant's objections were sustained, 17-19 and 31-49 (excepting those above noted), relate to the substance of the "decision of this grievance committee," what the several members thereof stated, what they recommended—including a possibly recommended settlement figure—how the vote stood on such recommendations, and whether the statements at the hearing were reported, taped or otherwise recorded.

As stated above the motion to quash was based upon two contentions: (1) that the subject matter was protected under the attorney-client privilege; (2) that it was nondiscoverable under the "work-product" rule.

In discussing the questions raised by these contentions some preliminary observations seem necessary. These relate to one public policy favoring discovery and one, sometimes two, countervailing public policies which restrict discovery. These opposing policies are usually at least a background accompaniment to a consideration of these discovery problems. The first is the public policy, a modern one,

which prompted the Legislature to design the new discovery procedures of the Code of Civil Procedure in sections 2016-2034 based upon the Federal Rules (which were expanded). This policy is expounded with elaboration in California in the "pilot" case of *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], stating that the procedures were designed both to streamline and take the " 'game' element" out of trial preparation; to prevent surprise at trial; but without intent to destroy the general adversary nature of litigation. *Greyhound* on page 377 quotes from Professor Louisell, " '. . . a law suit should be an intensive search for the truth, not a game to be determined in outcome by considerations of tactics and surprise . . . [but there is] nothing in these rules at odds with the fundamentals of the common law method of adversary adjudication. There is nothing in these rules to suggest a retreat from the common law's hard-headed conception of litigation as *adversary* and *competitive,* and from its historic notion that a struggle—warfare, if you will—between vitally interested partisans, is most apt to expose the truth.' "

The second public policy is that which justifies the attorney-client privilege. It is described by Justice Traynor in *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418], at page 235. It is said to be a privilege founded upon a "belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence."

And the court states (on p. 235):

". . . Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney."

It is also said that a lawyer's advice will be useless and perhaps misleading if the client withholds any of the facts and that he is likely to do so (especially if he deems the facts to be unfavorable), unless he has the assurance that the lawyer cannot be compelled to reveal that which he has been told. Quoting from 8 Wigmore, Evidence (3d ed.) section 2380a, page 813, the opinion states (on p. 235):

". . . [T]he absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the opponent.' "

The rationale of the privilege is expressed by Professor Jack H. Friedenthal in *Discovery and Use of an Adverse*

*Party's Expert Information*, 14 Stanford Law Review 455, as follows:

"The justification for the attorney-client privilege must be the desire to obviate an individual's fear that his communications to an attorney, if made public, would adversely affect the outcome of litigation in which he has an interest, or would so embarrass him that he would forego legal counsel rather than suffer the consequent humiliation."

The principle which underlies the protection of the "work product" rule has been variously described. It has been said that an attorney, to do his work effectively, must be free from fear that his private papers, investigative labors and research and thoughts as a result of such research will be subject to scrutiny at the will of the opposing side. (Friedenthal, *supra*, p. 470, discussing the rule of *Hickman* v. *Taylor*, 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451].)

A third principle, perhaps not strictly a "work product" rule but a rule of "fairness," is that unlimited discovery by an adverse party of information in the hands of the attorney for a litigant, would promote laziness, a result not calculated to further, but to impede, the search for truth which, under the common law concept, is the designed aim of the trial of a law suit. (See Friedenthal, *supra*, p. 479.)

In our consideration of the attorney-client privilege and before testing its application by a consideration of the facts present here some further generalizations are pertinent:

California rules declaring communications between attorney and client to be privileged (Code Civ. Proc., § 1881, subd. 2) were not changed by the new discovery legislation. (Code Civ. Proc., §§ 2016, subd. (b) and 2030, subd. (b); *Greyhound Corp.* v. *Superior Court, supra,* p. 370.)

"[T]he privilege is to be strictly construed in the interest of bringing to light relevant facts." (*People* ex rel. *Dept. of Public Works* v. *Donovan*, 57 Cal.2d 346, 354 [19 Cal.Rptr. 473, 369 P.2d 1].) Regarding interrogatories generally it is to be observed that their allowance as a part of the discovery procedure (in Code Civ. Proc., § 2030) is a new concept. (*Greyhound Corp.* v. *Superior Court, supra,* p. 373.)

Where interrogatories are sought the party seeking them does not first have to establish good cause; and the party seeking to establish the privilege has the burden of proof. (*Coy* v. *Superior Court*, 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457].)

Counsel for defendant, contending that the attorney-client

privilege applies here, urges that the members of the committee of doctors present met with the client and with the attorney for the purpose of "interpreting" the communications of the client to the attorney; that they were not only his agents but were the "conduits" through which the client's statements were made intelligible to the attorney. Reliance is upon *City & County of San Francisco* v. *Superior Court, supra,* where a physician had been employed by plaintiff's attorneys in a personal injury action to examine the plaintiff and to report to and advise the attorney so that he could evaluate the case for settlement or preparation for trial. This doctor had not treated the plaintiff at any time. The doctor's deposition was taken at which defendant's attorney sought to learn the results of the examination and the doctor's opinion as to her condition. It was held that the information was nondiscoverable under the attorney-client privilege.

There are several points of dissimilarity between this case and *City & County of San Francisco* v. *Superior Court, supra,* which in our opinion prevent its application.

Of these dissimilarities the one most noteworthy rests in the fact that the committee of doctors was called together not principally to discuss and consider the doctor-defendant's "communications" (defendant was present at the meeting only briefly); nor was the committee to consider only the statement of the case contained in said defendant's report. It was actually called to consider *all the evidence in the case,* and after this study its members were to express their individual opinions and conclusions to the lawyer. It is to be pointed out, moreover, that even as to the defendant's disclosures, although his communication thereof to his attorney would ordinarily be within the attorney-client privilege, the facts therein related by him were *not* privileged. An individual who is aware of material facts cannot, simply by repeating them to his attorney, prevent his adversary from questioning him as to those facts before or at the trial. (*People* v. *Donovan, supra,* at p. 383.) We will discuss this with greater particularity below.

In the article of Professor Friedenthal, *supra,* the author states (on p. 469):

". . . [I]t should be clear that the attorney-client privilege should be applied only to protect communications, not facts. Experts' reports are communications which may fall within the scope of the privilege. But the experts' observations and

conclusions themselves, whether or not contained within a report, and even if based to *some extent* on communications of the client, are facts which, if relevant, constitute evidence. Therefore, to apply the privilege to prevent an expert from testifying as to his analysis may completely preclude disclosure of evidence and thus be tantamount to the suppression of an eyewitness. Although in a situation where the party will call his expert as a witness it would seem highly undesirable that the adverse party be barred from pretrial discovery of the expert's analysis, there are other circumstances when discovery or use at trial of such information by the adverse party would be extremely unfair. To the extent that protection is needed in these latter situations, it can be obtained by limiting the extent of disclosure permitted without a prior showing of good cause. It seems clear that the blanket protection of the attorney-client privilege is unwarranted.''

There is another fact in this case distinguishing it from *City & County of San Francisco* v. *Superior Court, supra.* Defendant was not a layman whose statements needed interpretation by others with scientific knowledge to make them intelligible to his attorney. He was himself a physician. Justice Peters, referring to *City & County of San Francisco* v. *Superior Court, supra,* in *Suezaki* v. *Superior Court,* 58 Cal. 2d 166 [23 Cal.Rptr. 368, 373 P.2d 432], states at page 177:

''The matter is privileged if the agent is required to communicate to the attorney something *from* the client which the latter is unable to communicate himself, or where the *communication can better be transmitted through a specialist.*'' (Last italics supplied.)

And the same jurist says in *Oceanside, supra,* page 188:

''As is pointed out in the *Suezaki* opinion, there are certainly some instances where the expert's report does constitute a 'communication' from client to attorney. Such is true where the expert is required to examine the client, his personal affairs or property, or his mental impressions, in order to evaluate and transmit the same in a manner *in which the client is unable by reason of insufficient scientific or technical training.*''

We have concluded, therefore, that the information sought in the interrogatories proposed by petitioner is not protected under the attorney-client privilege.

The trial court, however, excluded discovery of this information not solely upon this ground but also under the ''work

product'' rule. This rule, if it did not have its genesis, at least had its most widely disseminated articulation, in *Hickman* v. *Taylor, supra.* In *Hickman* it was held that statements of witnesses in an attorney's possession and obtained by him or through his efforts were nondiscoverable at least when such witnesses were available for interrogation by the party seeking discovery. We have stated the rationale of the rule above.

Recent opinions by our Supreme Court have asserted that the ''work product'' rule, although inapplicable under the facts of *Greyhound, supra,* had not been abrogated by that decision, but, on the contrary, is a part of California law in a proper case. In *Suezaki, supra,* at page 177, it is stated that films caused to be taken by an investigator at an attorney's instance are the result of the ''work product'' of the attorney but not, on that account, privileged as a matter of law. In that case it is stated (on p. 178):

''. . . [U]nder the California rule, the trial court may consider the facts on which a claim of 'work product' is predicated, and exercise the discretion granted by the provisions of the discovery statutes in order to prevent abuse and to reach a determination consistent with equity and justice. This simply means that in California the fact that the material sought to be discovered is the 'work product' of the attorney is one factor to be used by the trial court in the exercise of its discretion in determining whether or not discovery should be granted.''

Justice Peters also points out that *Hickman* ''stressed the fact that the discovery there sought would be tantamount to compelling the attorney to become a witness.'' This same thought is expressed by Professor Friedenthal in his article; *supra* (at p. 741), in commenting upon the concurring opinion of Justice Jackson in *Hickman* where that jurist had ''indicated grave doubts whether there could ever be sufficient cause to require the attorney to set forth such oral communications.'' The author further states: ''Not only would such statements tend to be unreliable, since they would be colored by the attorney's legal opinions, but the attorney would be put in a very undesirable and demoralizing position of creating evidence which could be used to impeach his own witness, which might in turn force the lawyer to explain it on the witness stand.''

Chapter 1744, Statutes of 1963, adopted by the Legislature at the regular session just adjourned (effective date Septem-

ber 20, 1963) amends section 2016 and adds a new section, 2036. The amendment includes the provision in subdivision (b) of section 2016:

"The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

And in subdivision (g) of said section:

"It is the policy of this State (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

Thus the judicially established "work product" rule, as described in *Suezaki, supra,* will soon receive statutory confirmation.

We think the trial court here could not perceive, nor can we, any justification for putting the attorney for defendant here in the position of having to describe the discussions had at the meeting of the defendant with the committee. The information sought here from the attorney by interrogatories is not materially different from that sought by deposition in *Trade Center Properties, Inc. v. Superior Court,* 185 Cal.App. 2d 409 [8 Cal.Rptr. 345], where it was said (on p. 411):

"What petitioner here seeks is the right to take the deposition of his adversary's attorney upon matters pertaining to the latter's preparation for trial. Whether to protect the work product of that attorney or to restrict the picking of his brains, the court clearly should bar such a proceeding except upon a showing of extremely good cause. . . . Lacking strong elements of good cause, it would seem an abuse of discretion for the trial court to refuse an order that the deposition not be taken."

We hold that the trial court correctly ruled that petitioner was not entitled to discover from defendant's attorney the answers sought by the interrogatories. Should he be entitled to ascertain the same information from defendant himself— or that portion of the information within the knowledge of defendant since defendant was only present during part of

the discussion? And should he be entitled to ascertain from the members of the doctor-committee what defendant stated during the discussion?

We have adverted above to the rule that the knowledge possessed by a defendant is not privileged. And it appears now settled in California that neither are the opinions of experts nor their reasons for such opinions where the opinions are based upon open, known or discoverable facts. These are discoverable not only under Professor Friedenthal's reasoning (quoted *supra*), but under the rules announced in *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129] (an expert's opinion regarding the slipperiness of a sidewalk) ; *People* ex rel. *Dept. of Public Works* v. *Donovan, supra*; *Oceanside, supra*; *Mowry* v. *Superior Court,* 202 Cal.App.2d 229 [20 Cal.Rptr. 698]—in that portion of the opinion approved in *Oceanside* at page 190—(appraisers' opinions of the value of property being taken in eminent domain proceedings) ; and *San Diego Professional Assn.* v. *Superior Court,* 58 Cal.2d 194 [23 Cal. Rptr. 384, 373 P.2d 448] (an engineer's report based upon an examination of plans). The means by which plaintiff may share defendant's knowledge of the case is by taking his deposition, by requests for admissions and by interrogatories. Documents in defendant's possession may be inspected. Depositions taken will also elicit the opinions of the members of the doctor-committee after hypothetical questions based upon the factual information ascertained by plaintiff's attorney from defendant (or others). These depositions may be taken without binding plaintiff to the answers given. (Code Civ. Proc., § 2016.)

This much, under the facts here present, would seem equitably discoverable in order to put the adversaries on even terms in the opportunity to appraise and evaluate the case for settlement purposes and to prepare for trial. This much also will constitute an acquisition of facts by said plaintiff's counsel *through his own industry.* To allow less than this would be to permit the defense through the device of the committee meeting to corral all expert testimony available locally, place a gag on these witnesses and throw a cloak of privilege over their opinions, thus defeating the purpose of discovery.

Is more needed? Must the curiosity of plaintiff be satisfied

by disclosure of the discussions between the attorney and the persons present at the meeting?

Once the information open to plaintiff, as discussed above, has been obtained, it would seem that forcing the further disclosure of the discussions at the meeting could serve the plaintiff's cause only for impeachment purposes on cross-examination. ▮ The power of impeachment, of course, is a valuable instrument in the process of truth ascertainment. But it must be weighed against the benefits of protecting the privilege of "work product." ▮ This privilege protecting the attorney's investigative labors exists "unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice." (Code Civ. Proc., § 2016 as amended.) The privilege is limited but neither statute nor case law in California has defined its extent or limitation. Probably precise definition is impossible.

The trial court here determined that no injustice would result to plaintiff nor would she be unfairly prejudiced by denial of discovery of the discussions of this meeting. It no doubt considered the salutary purposes thereof. The committee is a group designed and calculated to assist in the settlement of malpractice suits and to effect such settlement with a minimum of publicity—which publicity is, as a matter of common knowledge, so damaging to the professional reputation of the defendant-doctor involved, irrespective of the merits of the litigation. That the plan, honestly administered, is a worthy one admits of no doubt. It will not be aided if the attorney or anyone else present must disclose everything which occurred at the conference, the discussions of which were intended to be intramural. In fact, it may be confidently predicted that should this court announce a rule requiring such disclosure, it would be the last of such meetings in California.

▮ We hold that in the interest of fairness the discussions at such a meeting should be privileged under the "work product" rule. Exceptions may arise where the trial court will, in the exercise of a sound discretion, be constrained to find the legitimate purposes of the meeting are being abused. If so, it will deny the privilege. No circumstances are disclosed here to compel us to overrule the trial court's decision. Plaintiff will be left, therefore, to the other discovery steps open to her as hereinabove noted.

The order to show cause and stay order heretofore issued are discharged and the writ of mandate is denied.

Schottky, J., and Friedman, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 11, 1963.