[Civ. No. 27755. Second Dist., Div. Two. Dec. 20, 1963.]

LOUIS NOWELL et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; PHILL SILVER, Real Party in Interest.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondent.

Phill Silver, in pro. per., for Real Party in Interest.

FOX, P. J.—Louis Nowell, one of the petitioners herein, and Phill Silver, real party in interest, were candidates for the office of councilman in the City of Los Angeles at the election of May 28, 1963. On June 6, 1963, Silver filed an action against Nowell and a number of others, alleging that in the course of the campaign defendants published certain material that assertedly libeled him. Subsequently Silver took the deposition of Nowell. Upon advice of counsel, Nowell refused to answer numerous questions. Silver's motion to compel him to answer pursuant to Code of Civil Procedure, section 2034, was granted as to certain questions and denied as to others.

Nowell and two of the other defendants petitioned this court for a writ of prohibition. The petition sets forth 11 questions to which objection was taken on the ground that they sought to elicit privileged communications between de-

fendants and their counsel. As to these questions petitioner Nowell asserted the attorney-client privilege and refused to answer. The trial court, however, granted the motion of the real party in interest to require answers to them. This petition seeks to restrain the respondent court from requiring him to answer.

In the course of the deposition Nowell testified that he and the other defendants met in conference with the attorney, that they were there seeking legal advice and that the relationship was that of attorney and client. In opposition to the motion to compel answers, petitioners submitted the declaration of their counsel, Charles D. Stern, Esq. It states that on May 21, 1963, he had a consultation with Nowell and the other defendants, at which time they retained him as their attorney to advise them and represent them in any action that might be filed by Silver as a result of a publication which they were planning; that Silver had already filed a number of suits against Nowell and others and his propensity for filing suits against the city and civil servants and other people in the public eye was well known; and defendants were sure that regardless of what was published a lawsuit would result. This declaration concludes that "the purpose of that meeting was to retain the attorney to represent them and to examine certain articles and documents and give a legal opinion as to whether or not such articles constituted a lible [sic] against Phill Silver."

Nine of the questions, set out in the footnotes, may be categorized as follows: (1) questions in which Nowell was asked if he solicited legal advice regarding particular conduct or inaction on his part;[1] (2) questions in which he was asked whether he discussed or asked his attorney regarding the legal effect of particular conduct or inaction on his part or the attorney gave advice regarding particular conduct or

[1] Did you at any time solicit legal advice to determine what your responsibility to me as a candidate would be if you didn't retract or make a statement as to what the marriage certificate did contain?

Did any attorney at any time advise you that you had a right to publish this page seven despite the fact that you had in your possession a marriage certificate which contradicted this document?

Did you at any time solicit the advice of any attorney as to whether there was a duty on your part to make known that the marriage certificate, my marriage certificate truthfully reflected my religion?

Did you consult an attorney about your responsibility to me arising from your failure to reveal publicly that my marriage certificate did in fact contain my true religion?

inaction on Nowell's part;[2] (3) questions in which Nowell was asked if he relied on the advice of his attorney in publishing particular material.[3]

Real party in interest concedes that one of the eleven questions was incomplete. As to it no answer was required. The remaining question was "What was the purpose of having a conference in your attorney's office?" This question was in effect answered by Nowell's testimony as well as by the attorney's declaration. ■ In any event there is no privilege as to the fact that an attorney-client relationship exists (*Brunner* v. *Superior Court*, 51 Cal.2d 616, 618 [335 P.2d 484]) inasmuch as a showing to this effect is the very foundation of the privilege. (See *Maier* v. *Noonan*, 174 Cal.App. 2d 260 [344 P.2d 373].)

In order not to needlessly extend this opinion, reference is here made to a very learned discussion of the history and rationale of the attorney-client privilege in *Rigolfi* v. *Superior Court*, 215 Cal.App.2d 497 [30 Cal.Rptr. 317]. Reference should also be made to *Brown* v. *Superior Court*, 218 Cal. App.2d 430 [32 Cal.Rptr. 527].

■ Section 1881, subdivision 2, Code of Civil Procedure declares in pertinent part: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment...." The privilege, of course, cannot be defeated by questioning the client instead of the attorney. (*I.E.S. Corp.* v. *Superior Court*, 44 Cal.2d 559, 564 [283 P.2d 700].)

In *Brown, supra*, it was pointed out (218 Cal.App.2d 430, 437) that: "California rules declaring communications between attorney and client to be privileged (Code Civ. Proc.

---

[2]Did you discuss with him whether or not there would be any legal responsibility to you if you published the article as shown?

Did your attorney tell you that you could reproduce the record from the U.S. District Court and eliminate the name of a person who was a participant perhaps in the matter and still for you to say that this was an actual question and answer exchange?

Did you ask your attorney whether or not the statement "Silver identified her as the lady who started making payments on his automobile three months before he was granted an annulment of his marirage to Inge" was an imputation of an illiict relationship?

[3]Then I take it you did not rely upon the advice of any attorney in publishing this excerpt from the application?

Did you rely on any advice that your attorney gave you in this conference in the matter of publishing this article, "WHO WAS THE MYSTERY LADY"?

§ 1881, subd. 2) were not changed by the new discovery legislation. [Citations.]'' Section 2016, subdivision (b), Code of Civil Procedure, makes this point clear in the following language: ''All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or by judicial decision.''

■■■ Real party in interest contends that the information sought is not privileged and notes that the questions do not call for conversations between attorney and client. He insists that they simply call for a yes or no answer. However, he over-simplifies the implications in these questions. He clothes them in raiment of innocence that tends to conceal but nevertheless still reveals their privileged content. From an examination of these questions, it is apparent that each question, in addition to seeking information as to whether Nowell obtained legal advice, also seeks an admission on his part that he asked his attorney questions about particular matters which indicated certain conduct on his part, or that he had certain knowledge which he imparted to his counsel, or that his counsel gave him advice based thereon. Each question assumes some fact that Nowell must impliedly admit whether his answer is in the affirmative or negative.

Since an analysis of all nine questions would not be of interest to the profession generally nor helpful in other discovery proceedings we shall illustrate the difficulty implicit in these questions by briefly analysing only one. The last question under footnote 1 will adequately serve this purpose. It reads: ''Did you consult an attorney about your responsibility to me arising from your failure to reveal publicly that my marriage certificate did in fact contain my true religion?'' This question calls for an admission that the client (Nowell) did in fact know that Silver's marriage certificate revealed his true religion and conveyed this information to his attorney. This is an indirect way of getting at the conversation between the attorney and the client. The use of such a technique should not be permitted as a means of impinging upon or defeating the privilege growing out of the attorney-client relationship. The importance of this principle is stated as an introduction to the various subdivisions of Code of Civil Procedure section 1881 in this language: ''There are particular relations [such as the relation of attorney and client] in which it is the policy of the law to

encourage confidence and to preserve it inviolate.'' The privilege is based on grounds of public policy and is in furtherance of the proper and orderly administration of justice. (See *City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].)

 In view of our legislative declaration the attorney-client privilege should be carefully guarded, absent a waiver thereof by the client, or other well-recognized exceptions. We therefore conclude that in the instant case the attorney-client relation was established; that the communications between the attorney and client were in the course of that relation and within the privilege growing out of it;[4] and that to require Nowell to answer the questions here in controversy on this deposition hearing would be an invasion of said privilege.

 The attorney-client privilege does not extend to communications between the attorney and client ''having to do with the client's contemplated criminal acts, or in aid or furtherance thereof. . . .'' (*Abbott* v. *Superior Court*, 78 Cal. App.2d 19, 21 [177 P.2d 317]; *Wilson* v. *Superior Court*, 148 Cal.App.2d 433, 443 [307 P.2d 37].) Similarly, when the client seeks advice that will serve him in the contemplated perpetration of a fraud there is no privilege. (*Agnew* v. *Superior Court*, 156 Cal.App.2d 838, 840 [320 P.2d 158].) Real party in interest makes charges attempting to bring this case within these exceptions. But it would be destructive of the privilege to require disclosure on the mere assertion of opposing counsel. ''Accordingly, evidence should be presented, to make a prima facie showing that this was the client's purpose, before the communication is received.'' (Witkin, Cal. Evidence, § 420, p. 470.) 58 American Jurisprudence, *Witnesses*, section 516, page 289, says: ''The mere charge of illegality will not defeat the privilege. There must be prima facie evidence that the illegality has some foundation in fact.'' On the record before us, real party in interest wholly fails to make a prima facie showing of any illegal or fraudulent purpose on the part of Nowell.

 Real party in interest vigorously urges us to extend the above exceptions to include communications involving contemplated tortious acts. The courts generally, including

---

[4]Where two or more persons engage an attorney to represent all of them, the privilege is waived as between the parties, but it remains as to strangers. (*People* v. *Kor*, 129 Cal.App.2d 436 [277 P.2d 94]; *People* v. *Abair*, 102 Cal.App.2d 765 [228 P.2d 336].)

those of our own state, have limited the exceptions to contemplated crimes or fraud. In commenting on this question Mr. Witkin, *ibid.*, points out that to go beyond the conventional exceptions would open up "too large an area of nullification of the privilege, and, in view of the wide variety of torts and the technical character of many, presents difficult problems for an attorney consulting with his client. (45 Cal.L.Rev. 77, note 15.)" In the circumstances we are not persuaded that the exception should be enlarged to include the instant case.

Let the peremptory writ issue.

Herndon, J., concurred.

A petition for a rehearing was denied January 16, 1964.