[Civ. No. 48837. Second Dist., Div. One. Feb. 14, 1977.]

GILBERT V. GONZALES, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES
JUDICIAL DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**COUNSEL**

Burt Pines, City Attorney, Ward G. McConnell and James M. Hodges, Deputy City Attorneys, for Real Party in Interest and Appellant.

Miguel F. Garcia, Percy Duran, David Arredondo and Tom Stanley for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**OPINION**

LILLIE, Acting P. J.—In a misdemeanor prosecution for assault in violation of section 240, Penal Code and resisting arrest in violation of section 148, Penal Code (People v. Gilbert Valenzuela Gonzales, No. 31-498576, Municipal Court of Los Angeles Judicial District), defendant's discovery motion[1] was granted.[2] Following a second hearing on February 4, 1975, at which the arresting officer (Curiel) asserted the attorney-client privilege, and the court sustained the claim of privilege, it modified the order of January 16, 1975, compelling disclosure to exclude the statements of the arresting officer/victim regarding the incident to investigators from the Internal Affairs Division (IAD) of the police department.[3] No sanctions were imposed on the prosecution. Thereafter defendant sought and the superior court granted writ of mandate ordering the municipal court to consider imposition of sanctions on the prosecution based on the exclusion of the statements of complaining witness to IAD. The People appeal from the judgment.

---

[1]The motion for pretrial discovery included a request for: "4. All statements made by percipient officers, in connection with, arising out of, or relating to the offenses charged in the complaint herein, from the date of the alleged offense (November 15, 1974), through the date of any order made upon this motion, including statements given to Internal Affairs Investigators;

"5. Any supplemental crime reports, evidence reports, notes, memoranda, and other records, whether intra-police memoranda, or otherwise, related to the incident in question of the arresting and percipient officers herein (J. Curiel and C. C. Smith); . . ."

As indicated, there were two arresting officers, but this case involves only one of them, Curiel, the alleged victim of the charged offenses. The term "arresting officer" refers throughout to Curiel.

[2]The minutes of January 16, 1975, reveal the court's ruling on the motion insofar as here pertinent, as follows:

"4. Granted as to law enforcement officers only.

"5. Granted as to statements made by Officers Curiel and Smith."

A copy of a formal order entitled order for pretrial discovery purportedly signed on January 17, 1975, and attached to petition for writ of mandate reflects that the city attorney is ordered to provide defendant with certain items, listing them; those pertinent hereto are enumerated as follows:

"4. All statements made by percipient officers, in connection with, arising out of, or relating to the offenses charged in the complaint herein, from the date of the alleged offense (November 15, 1974), through the date of any order made upon this motion, including statements given to Internal Affairs Investigators;

"5. Any supplemental crime reports, evidence reports, notes, memoranda, or otherwise, related to the incident in question of the arresting and percipient officers herein (J. Curiel and C. C. Smith); . . . ."

[3]In this connection the minutes of February 4, 1975, read: "Court sustains the claim of attorney-client privilege and excepts from discovery order—Requests #4 and #5 are modified to except statement to Internal affairs."

Following his arrest Gilbert Gonzales complained to IAD that Officer Curiel, the arresting officer, had used excessive force against him and his "common law wife." According to the undisputed testimony of Sergeant Stark of IAD (given at the hearing in municipal court on the modification of discovery order), the filing of such a complaint results in an investigation the primary purpose of which is to gather evidence for use by the city attorney in defense of a possible civil action against the police or the city arising therefrom,[4] the secondary purpose, to discover if there exist grounds for discipline of the officer.[5] The court found these facts to be true; and further found that the city attorney acts as attorney for defense of civil actions against police arising out of their employment, that Officer Curiel was led to believe his statements to IAD were confidential, that he intended said statements to be confidential, and that IAD investigators were acting as agents of the city attorney's office. Thus Officer Curiel's claim of attorney-client privilege was sustained and the previously granted discovery order was modified to exclude his statements to IAD investigators. Apparently believing it lacked power to do so, the court declined to impose sanctions on the prosecution based on this exercise of privilege.[6]

Upon hearing defendant's application for extraordinary relief, the superior court found the same as did the municipal court, but concluded that the court had the authority to impose sanctions for the exclusion of Officer Curiel's statements to IAD, and that under the circumstances it should consider whether such sanctions, including dismissal or exclusion of Curiel's testimony, should be imposed.

The question of whether sanctions may be imposed on the prosecution based on Officer Curiel's exercise of the privilege to prevent disclosure of

---

[4]At that time Gonzales had not initiated any civil action.

[5]Such grounds might be noncompliance with departmental regulations or an actual violation of law. Apparently, if a violation of law is discovered, IAD makes this fact known to the appropriate investigative branch of the department which then undertakes an investigation independent of IAD. In cases of serious noncompliance with departmental regulations, it appears that IAD does all of the investigative work.

[6]When defense counsel urged the imposition of sanctions, the court responded: "You are certainly correct that we have two rather strong interests here that are being called upon and it is a question of what you posed to the Court and that is that the police officers should not be permitted to come in and be complaining witnesses and withhold information which would be useful in cross-examination to the defense and I certainly understand your arguments and points and I don't know what the state of law will be at some time in the future, but I don't think we have reached that point yet.

"I have seen no appellate decision anywhere which would support your principles although I am not precluding any possibility and I would say that this may be the case should you care to take it up on writ."

his statements to IAD investigators arises only if, in the first instance, the requisites for the exercise of such a privilege were present.

■ Civil discovery procedure has no relevance here to proceedings involving a criminal prosecution. (*Pitchess* v. *Superior Court,* 11 Cal.3d 531, 536 [113 Cal.Rptr. 897, 522 P.2d 305].) Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation. (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 176, fn. 12 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. (*Hill* v. *Superior Court,* 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353].) "Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits." (*People* v. *Riser,* 47 Cal.2d 566, 586 [305 P.2d 1], [cert. den., 353 U.S. 930 (1 L.Ed.2d 724, 77 S.Ct. 721), app.dism. 358 U.S. 646 (3 L.Ed.2d 568, 79 S.Ct. 537), disapproved on other grounds, 60 Cal.2d 631, 649 (36 Cal.Rptr. 201, 388 P.2d 33)].) Here, the state has asserted no privilege, and had it successfully asserted its "official information" privilege (Evid. Code, § 1040) adverse consequences, namely dismissal of the charges or a directed verdict against the prosecution on the issue to which the excluded material relates, would have followed. (See *Pitchess* v. *Superior Court,* 11 Cal.3d 531, 539 [113 Cal.Rptr. 897, 522 P.2d 305]; *United States* v. *Reynolds* (1953) 345 U.S. 1, 12 [97 L.Ed. 727, 735, 73 S.Ct. 528, 32 A.L.R.2d 382]; *Price* v. *Superior Court,* 1 Cal.3d 836, 842-843 [83 Cal.Rptr. 369, 463 P.2d 721]; Evid. Code, § 1042, subd. (a).)

■ Ordinarily, the statements of Officer Curiel, the complaining witness, to representatives of the police department would be discoverable.[7] (See *Joe Z.* v. *Superior Court,* 3 Cal.3d 797, 805 [91 Cal.Rptr. 594, 478 P.2d 26].) In order for Officer Curiel to successfully invoke the attorney-client privilege he was obliged to demonstrate that there existed

---

[7]The prosecution indicated its only witnesses would be Officers Curiel and Smith. No challenge has been made to the adequacy of defendant's showing in support of his discovery motion.

between himself and the city attorney's office a professional attorney-client relationship, that communications were made in the course of that relationship, and that the communications were intended to be confidential. (*Tanzola* v. *De Rita*, 45 Cal.2d 1, 6 [285 P.2d 897]; see Evid. Code, § 952.) ■ Passing over the first two criteria, we believe Officer Curiel's assertion of attorney-client privilege was erroneously sustained inasmuch as the record shows as a matter of law that his statements to IAD investigators were not intended to be confidential within the attorney-client privilege.

■ The attorney-client privilege is based on grounds of public policy and is in furtherance of the proper and orderly administration of justice. (*Nowell* v. *Superior Court*, 223 Cal.App.2d 652, 657 [36 Cal.Rptr. 21, 2 A.L.R.3d 853].) The privilege is a statutory creation, embodied in Evidence Code section 950 et seq., and an exception to the general rule requiring disclosure. (See Evid. Code, § 911.) "The objective of making a particular communication privileged is to encourage a client to make a complete disclosure to his attorney without fear that others may also be informed. [Citations.]" (*Holm* v. *Superior Court*, 42 Cal.2d 500, 506-507 [267 P.2d 1025, 268 P.2d 722], disapproved on other grounds, 58 Cal.2d 166, 176 [23 Cal.Rptr. 368, 373 P.2d 432].) As an obstruction to the search for all relevant information, the privilege is to be strictly construed. (*City & County of S.F.* v. *Superior Court*, 37 Cal.2d 227, 234 [231 P.2d 26, 25 A.L.R.2d 1418]; *Sanders* v. *Superior Court*, 34 Cal.App.3d 270, 280 [109 Cal.Rptr. 770].)

■ In order for an individual to successfully invoke the attorney-client privilege it must be shown that he had relied on the confidentiality of the relationship in the communication to his attorney. (*People* v. *Sturgess*, 178 Cal.App.2d 435, 441 [2 Cal.Rptr. 787].) Thus, if the client communicates with his attorney with the intention that the communication be conveyed to another, the communication is not privileged. (*People* v. *Dubrin*, 232 Cal.App.2d 674, 680 [43 Cal.Rptr. 60].) ■
■ ■■■ Similarly, if the communication is made by the client in the open presence of a third party not present to further the interest of the client in the consultation, it is not privileged.[8] (*People* v. *Poulin*, 27

---

[8]It is sometimes said that disclosure under such circumstances constitutes a waiver of the privilege.

It is true that "A disclosure that is itself privileged is not a waiver of any privilege" (Evid. Code, § 912, subd. (c)), but this speaks to a situation in which the communicant is the holder of more than one privilege. Assuming Curiel's statements to fall within the "official information" privilege of Evidence Code 1040, it is his employer, the public entity, rather than the officer, which holds the privilege.

Cal.App.3d 54, 64 [103 Cal.Rptr. 623]; (*People* v. *Cox,* 263 Cal.App.2d 176, 188 [69 Cal.Rptr. 410].) In either case, the circumstances mandate the conclusion that the communication was not intended to be confidential, notwithstanding the protestations of the client as to his subjective intent. (See *People* v. *Hall,* 55 Cal.App.2d 343, 356-357 [130 P.2d 733].) Thus, had Officer Curiel made the statements in question to two persons, one acting as agent of the city attorney, and the other acting as representative of the police department investigating grounds for possible discipline, it is apparent that the presence of the latter party would preclude the officer's assertion of the attorney-client privilege. The fact that a single person represented both the city attorney and the police department should not change the result. In either case, as the client knows, the communication is not confined to the attorney-client relationship. In either case it must be the rule that the law will not afford the communication greater secrecy than the client has attempted.

 It appears that the trial court sustained Officer Curiel's assertion of attorney-client privilege as a result of mistaken reliance on the "dominant purpose" doctrine. This principle, the product of civil discovery proceedings, was first announced in *Holm* v. *Superior Court, supra,* 42 Cal.2d 500 in which plaintiff in a negligence action sought discovery of, inter alia, defendant bus driver's statement to an agent of his corporate employer, also a defendant, for forwarding to the defendants' attorney for use in possible litigation. The court, sustaining the claim of privilege, said: "If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates." (P. 507.) But the holding of the case is not unambiguous. In *D. I. Chadbourne, Inc.* v. *Superior Court,* 60 Cal.2d 723, 733 [36 Cal.Rptr. 468, 388 P.2d 700], the court observed that "*Holm* failed to state *whose* purpose was involved. Is it the purpose of the employee, or that of the corporation?" (Court's italics.) Of the principles enunciated in *Chadbourne,* in clarification of the issue, those arguably relevant in a case like that at bench are: "1. When the employee of a defendant corporation is also a defendant in his own right (or is a person who may be charged with liability), his statement regarding the facts with which he or his employer may be charged, obtained by a representative of the employer and delivered to an attorney who represents (or will represent) either or both of them, is entitled to the attorney-client privilege on the *same basis as it would be entitled thereto if the employer-employee*

*relationship did not exist;* . . . [¶] 6. When the *corporate employer* has more than one purpose in directing such[9] an employee to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived."[10] (Italics added.) (Pp. 736-737.) Or, as had been earlier stated by the court, "the 'dominant purpose' doctrine . . . is inapplicable to a natural person. . . ." (*Suezaki* v. *Superior Court,* 58 Cal.2d 166, 174 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].)

Thus the dominant purpose doctrine, even if otherwise applicable to a case like the instant one, was erroneously applied where the employee and not the corporate employer sought to assert the attorney-client privilege. Whether or not the statements to IAD investigators were intended to be confidential has to be judged from the perspective of the person making the statements. That person testified that he made his statements knowing that they would be transmitted to the city attorney, but also knowing that they would be the basis for disciplinary proceedings against him should grounds therefor be indicated. The legal conclusion to be drawn from undisputed facts is a matter for independent determination by an appellate court. (*Oakland Unified Sch. Dist.* v. *Olicker,* 25 Cal.App.3d 1098, 1106-1107 [102 Cal.Rptr. 421].)

The judgment granting peremptory writ of mandamus is modified in accordance with the views hereinabove expressed by deleting therefrom the last paragraph beginning on line 6 and ending on line 9 on page 2 thereof, as follows: "The Municipal Court of Los Angeles Judicial District, in Case No. 31-498576, consider whether sanctions should be imposed in view of the exclusion of Officer Curiel's statements Internal Affairs Division of the Police Department"; and substituting therefor the following: "The Municipal Court of Los Angeles Judicial District, in Case No. 31-498576, vacate and set aside that portion of its minute order of February 4, 1975, recited in the minutes of said date, modifying pretrial discovery order entered January 16, 1975, as follows, 'Court sustains the claim of attorney-client privilege and excepts from discovery

---

[9]"Such" refers to the situation "[w]here the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business . . . ." (*Chadbourne* at p. 737.)

[10]The clause beginning with "unless" is obviously suggestive, in the case where the dominant purpose test is applicable, of analysis analogous to that employed herein.

order—Requests #4 and #5 are modified to except statement to Internal affairs.' " In all other respects the judgment is affirmed.

Thompson, J., and Hanson, J., concurred.