[No. A016338. First Dist., Div. Four. Aug. 17, 1982.]

DAVID D. DICKERSON et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THOMAS J. FERRITO et al., Real Parties in Interest.

COUNSEL

Jeffrey J. Parish, Robert L. Gorman, Glenn Westreich and Rosenblum, Rabkin, Parish, Bachli & Bacigalupi for Petitioners.

No appearance for Respondent.

Gregg L. Kays, Popelka, Allard, McCown & Jones and Morgan, Morgan, Towery, Morgan & Spector for Real Parties in Interest.

## OPINION

CHRISTIAN, J.—David D. Dickerson and Karl D. Chandler seek a writ directing respondent superior court to set aside an order compelling them to answer questions propounded at a deposition. Dickerson is a defendant in an action now pending in respondent court brought by real parties Thomas J. Ferrito and others. Real parties moved for an order compelling Chandler, an attorney who had advised Dickerson in matters which are connected with the litigation, to answer questions at a deposition. Respondent court ordered Chandler to answer the questions objected to. Petitioners sought a writ to review the order, contending that the order violates the attorney-client privilege.

Real parties in interest were minority shareholders in ADZ, Inc. Dickerson was the controlling shareholder and was president and a director of the corporation. Real parties sued in respondent court seeking damages for breach of fiduciary duty, fraud and conspiracy. Five causes of action were pleaded. The first alleged an agreement between Dickerson and Harte-Hanks Communications, Inc., and its subsidiary Santa Clara Publishing, Inc., whereby Harte-Hanks and Santa Clara would purchase all of the stock of ADZ, Inc. The sum of $2.5 million was to be paid to Dickerson and the other shareholders; pursuant to a separate agreement, $1.25 million was to be paid to Dickerson, assertedly for consulting services. Real parties alleged that Dickerson breached his fiduciary duty as president and director of ADZ, Inc., by taking advantage of the lack of a market for ADZ shares and forcing the minority shareholders to accept the agreements on terms unfair to them.

Real parties took the deposition of Karl D. Chandler, who was counsel to ADZ, Inc., throughout the period when the acquisition and consulting agreements were negotiated. Invoking the attorney-client privilege, Chandler refused to answer questions about his discussions with Dickerson concerning the acquisition and consulting agreements, benefits made available to Dickerson under the consulting agreement, and a separate employment agreement between ADZ, Inc. and Dicker-

son's former wife, Cristine Barsanti. In addition, Chandler refused to answer questions concerning a meeting between Dickerson, Chandler, Barsanti and Jack Offield, an officer of ADZ, Inc., held immediately preceding a meeting of ADZ, Inc. shareholders.[1] On motion by real parties, respondent court ordered Chandler to answer; the present writ proceeding ensued.

■ In most cases the delay caused by interim review of discovery orders would cause greater harm to the judicial process than would enforcement of possibly improper discovery orders. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170 [84 Cal.Rptr. 718, 465 P.2d 854].) Therefore, a writ proceeding is not the favored method of reviewing discovery orders; the aggrieved party must ordinarily raise the issue on appeal from the final judgment. (*Sav-on Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739].) The appellate court may, however, appropriately entertain a petition for extraordinary relief when compulsion to answer would violate a privilege. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal. Rptr. 309, 508 P.2d 309]; *City of Long Beach* v. *Superior Court* (1976) 64 Cal.App.3d 65, 70 [134 Cal.Rptr. 468].)

---

[1]. Q. Did you have any discussion with Mr. Dickerson about the negotiations as they were in progress?

2. Q. Did Mr. Dickerson have conversations with you concerning his negotiations with Harte-Hanks, concerning the sale of ADZ, Inc., stock?

3. Q. Did you have any further conversations with Mr. Dickerson in August of 1979, relating to the sale of stock of ADZ, Inc., to Harte-Hanks?

4. Q. Did you have any conversations with David Dickerson concerning the taxation of benefits that were available to him under that consultation agreement?

5. Q. After receiving the draft of the acquisition agreement, did you consult with Mr. Dickerson concerning the acquisition agreement?

6. Q. Did you discuss with Mr. Dickerson your recommendation for any changes in the draft that was presented to you?

7. Q. Did Mr. Dickerson give you his wishes with regard to changes in the draft of the acquisition agreement?

8. Q. On how many occasions did you discuss the draft of the acquisition agreement?

9. Q. Did you ever have a discussion with Mr. Luther concerning those provisions [under which an automobile was transferred to Mr. Dickerson "free of any obligations under any purchase or lease agreement"]?

10. Q. What was the subject matter of your discussion [with Mr. Dickerson, Christine Barsanti, and Jack Offield]?

11. Q. Did you have any discussions with David Dickerson relative to this employment agreement with Christine Barsanti?

12. Q. Did you have any discussions with David Dickerson concerning this employment agreement as it related to spousal support for Christine Barsanti?

13. Q. Were you ever consulted about the rights of the minority stockholders in connection with transactions involving the Western Media Exchange?

■ The standard of review on a writ petition seeking to protect privileged matters from compelled disclosure differs from the usual prerogative writ case. "'Although prohibition is in theory a jurisdictional writ [citation] the alternative use of mandamus [citation] has had the effect of changing the test from excess of jurisdiction to abuse of discretion. Hence the discovery order may be prohibited not only where it is wholly invalid, but also where, under the circumstances, it constitutes an abuse of the lower court's discretion. [Citation.]'" (*American Mut. Liab. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 589 [113 Cal. Rptr. 561], quoting Witkin, Cal. Evidence (2d ed. 1966) p. 959.)

■ Petitioners contend that the order compelling answers to deposition questions violated the attorney-client privilege formerly held by ADZ, Inc. A client ordinarily has the privilege to refuse to disclose or to prevent another from disclosing, a confidential communication between the client and his lawyer. This privilege may be claimed either by the client or the attorney (Evid. Code, § 954), but it belongs to the client who alone may waive it (Evid. Code, §§ 953, 954, 955).

■ The client who originally retained Chandler's services was ADZ, Inc. (Evid. Code, § 951.) A corporation who retains the services of an attorney is a "client" protected by the privilege. (Evid. Code, § 175; *D.I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700].) Here, the client holding the privilege, ADZ, Inc., was merged into Santa Clara Publishing, Inc. and has ceased to exist. (Corp. Code, § 1107.) The attorney-client privilege, originally held by ADZ, Inc., is now held by its successor in interest, Santa Clara Publishing, Inc. (Evid. Code, § 953, subd. (d)). The privilege may be claimed by "The person who was the lawyer at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure." (Evid. Code, § 954, subd. (c).) Real parties in interest contend that Chandler could not claim the privilege unless he had received express authorization to do so from the original client's successor in interest. This contention cannot be sustained. ■ As long as there is a holder of the privilege in existence at the time disclosure is sought, the attorney has the duty to exercise the privilege unless the holder of the privilege instructs him not to do so. (*Ibid.*; Evid. Code, § 955; Bus. & Prof. Code, § 6068, subd. (c); *People* v. *Vargas* (1975) 53 Cal.App.3d 516, 527 [126 Cal.Rptr. 88].) ■ The present holder of the privilege is still in existence; therefore, the privilege may be invoked without fur-

ther authorization. Accordingly, unless some exception to the rule of privilege applies, Chandler's invocation of privilege is to be upheld.

Citing *Garner* v. *Wolfinbarger* (5th Cir. 1970) 430 F.2d 1093, 1101, cert. den. 401 U.S. 974 [28 L.Ed.2d 323, 91 S.Ct. 1191], real parties in interest urge this court to recognize a new nonstatutory exception to the attorney-client privilege. In *Garner*, the United States Court of Appeals held the privilege to be qualified in cases where a corporation was in litigation against its own stockholders. Under the *Garner* rule, availability of the attorney-client privilege to the corporation is "subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." (*Id.*, at pp. 1103-1104.)

The *Garner* court was empowered to create this new exception by rule 501 of the Federal Rules of Evidence (28 U.S.C.) which provides that the rules of privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." This rule provides federal courts "'... with the flexibility to develop rules of privilege on a case-by-case basis,' ..." (*Trammel* v. *United States* (1980) 445 U.S. 40, 47 [63 L.Ed.2d 186, 193, 100 S.Ct. 906, 911].) ▮ The courts of this state, however, are not free to create new privileges as a matter of judicial policy and must apply only those which have been created by statute. (Evid. Code, § 911; *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) Of course, real parties are not urging the adoption of a new privilege; they urge instead that an existing statutory privilege be limited by the creation of an exception to it. Such an action on the part of the courts is similarly precluded, however, because the area of privilege "is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme." (Evid. Code, § 911, Cal. Law Revision Com. comment.)

The attorney-client privilege is codified in Evidence Code section 954, which unambiguously provides that it can be limited only by statutory exceptions: the privilege applies "[s]ubject to Section 912 and except as otherwise provided in this article, ..." Specifically, there is no language in the statute which justifies a distinction between corporate clients in suit against their shareholders and other clients in different circumstances. Indeed, corporations are given the same privilege as natural persons. (*D.I. Chadbourne, Inc.* v. *Superior Court, supra*, 60 Cal.2d 723, 736.) Thus although the rule of *Garner* v. *Wolfinbarger, supra*,

430 F.2d 1093, may be a desirable means of preventing abuse of the attorney-client privilege by corporate fiduciaries, this court cannot properly alter the legislative scheme by adopting such a nonstatutory exception. In the absence of an applicable statutory exception to the privilege, respondent court's order compelling answers must be held a violation of the corporation's attorney-client privilege.

Had the issue been brought before respondent court, it is possible that an exception might have been found in the enactment nullifying privilege "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." (Evid. Code, § 956.) The communications between Chandler and Dickerson were allegedly made in furtherance of fraud. ■ However, a mere allegation of fraud is insufficient to make the exception applicable. "[I]t would be destructive of the privilege to require disclosure on the mere assertion of opposing counsel. 'Accordingly, evidence should be presented, to make a prima facie showing that this was the client's purpose, before the communication is received.'" (*Nowell* v. *Superior Court* (1963) 223 Cal.App.2d 652, 657 [36 Cal.Rptr. 21, 2 A.L.R.3d 853].) ■ Thus, had a prima facie showing of fraudulent purpose been made, the discovery order would have been proper. But real parties in interest did not raise the issue before the superior court; hence that court did not rule on whether a prima facie case had been established. This court cannot appropriately make such a finding; therefore, we can only grant the writ, without prejudice to consideration by respondent court of a renewed motion to compel answers based on the crime or fraud exception to the attorney-client privilege.

A writ will issue commanding respondent court to vacate its order compelling answers without prejudice to consideration of a renewed motion based on the crime or fraud exception to the attorney-client privilege.

Caldecott, P. J., and Rattigan, J., concurred.