[No. G006493. Fourth Dist., Div. Three. July 6, 1988.]

RONY FERNANDO RUBIO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
H. S. et al., Real Parties in Interest.

**COUNSEL**

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, Thomas Havlena and Ronald E. Klar, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

H. S., in pro. per., and for Real Party in Interest R. S.

Cecil Hicks, District Attorney (Orange), Michael R. Capizzi, Chief Assistant District Attorney, Maurice L. Evans, Assistant District Attorney, Thomas M. Goethals and E. Thomas Dunn, Jr., Deputy District Attorneys, as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**SCOVILLE, P. J.**—Petitioner Rony Rubio is charged with felony sex offenses against a minor. He sought extraordinary writ relief from this court after the trial judge quashed a subpoena duces tecum for a videotape held by the real parties in interest, Mr. and Mrs. H. S., father and stepmother of the victim. The tape depicts the real parties in interest engaging in sex acts supposedly similar to the acts petitioner allegedly performed on the minor. Both petitioner and the minor viewed at least part of the tape before the alleged crimes occurred. Nevertheless, the real parties in interest were successful in convincing the trial court the tape was protected by the marital privilege. Initially, we agreed and summarily denied the petition seeking reversal of the order quashing the subpoenas. The Supreme Court granted review, transferred the matter to this court and directed we issue an alternative writ, which we did.

### I

Petitioner is in custody awaiting trial on two counts of felony child molestation (Pen. Code, § 288, subds. (a) & (b)) with enhancement allegations (Pen. Code, § 1203.066, subds. (a)(1), (a)(2), (a)(8) & (a)(9)). He allegedly molested seven-year-old B. S. (herein the child) on two occasions in 1987, while living in the S. home with his mother, the housekeeper. After his arrest, petitioner told the police about a videotape which depicted Mr. and Mrs. S. engaging in sexual acts. Petitioner denied molesting the child and implied she made it up after seeing the videotape. The child later told the police she had seen her father and his wife in the tape, doing what petitioner did to her. She also told the police petitioner got the idea for that from viewing the videotape.

Mr. and Mrs. S. refused to turn the videotape over to the police and later moved to quash petitioner's subpoena duces tecum to produce the videotape at his preliminary hearing. The magistrate granted the motion to quash, ruling the affidavits in support of the subpoena failed to establish the necessary good cause to compel production. At the preliminary hearing the child was cross-examined about what she saw on the tape, which she claimed to have observed for only 12 seconds while playing with her Barbie dolls outside of petitioner's room. There was no objection to her testimony about

what she saw on the tape, although both Mr. and Mrs. S. were present in court. Thereafter, when called as witnesses by defense counsel, both Mr. and Mrs. S. asserted a marital privilege in refusing to answer any questions regarding the contents of the videotape. The magistrate sustained their assertion of the privilege.

After petitioner was held to answer in superior court, he again served Mr. and Mrs. S. with subpoenas to produce the videotape, alleging the necessity of his access to the tape "to show that [the child]. obtained her sexual knowledge and ideas concerning the alleged incident from the tape." Appearing in propria persona on his own behalf, and as counsel for his wife, Mr. S. (an attorney) again sought to quash the subpoenas. The affidavit in support of the motion to quash established that the tape had been made by the real parties in interest privately in their home when no one else was present. In Mr. S.'s words, the tape was intended to be confidential, and neither he nor his wife had ever given anyone permission to view it. The tape was labeled "Superman" because the movie of that name had previously been recorded on the same tape. It had been stored several years before on the top shelf of a closet, separate from all of the other videotapes in the house. Numerous household items were stored in that closet; none of the petitioner's nor his mother's personal effects were stored there.

The trial court quashed the subpoenas, concluding the marital privilege applied and had not been waived. The judge opined petitioner would nevertheless be protected because he would be free to cross-examine the child about what she saw on the videotape. Indeed she had already told the police what she saw and had been cross-examined about the same, without objection, at the preliminary hearing. The court did order the real parties in interest to retain the tape until the issue of its discoverability be finally resolved by the appellate courts.

## II

Evidence Code section 980 grants a spouse the "privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife." ■ The privilege extends to written as well as oral communications. (See *People* v. *Peak* (1944) 66 Cal.App.2d 894, 903 [153 P.2d 464], disapproved on other grounds in *People* v. *Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281].) ■ And a videotape is a writing within the meaning of section 250 of the Evidence Code. (*People* v. *Moran* (1974) 39 Cal.App.3d 398, 407-408 [114 Cal.Rptr. 413].)

■ Petitioner asserts the acts depicted on the tape are not privileged because acts are not communications. ■ It is true that the fact of communicating, as opposed to the substance of the communication, is not privileged. (*People* v. *Bradford* (1969) 70 Cal.2d 333, 342, fn. 2 [74 Cal.Rptr. 726, 450 P.2d 46]; *Tanzola* v. *De Rita* (1955) 45 Cal.2d 1, 6 [285 P.2d 897].) Thus, the fact that sex acts were performed is probably not a privileged communication. ■ Regardless, the videotape of those acts, as a writing, is a communication within the meaning of the privilege.

■ Despite petitioner's claim to the contrary, the evidence supports the trial court's conclusion Mr. and Mrs. S. intended the tape to be confidential. A communication memorialized in ink does not diminish the spouse's intent to communicate confidentially. Neither does the recordation of the communication on videotape. Nor is the videocamera a third party observer whose presence renders the communication nonconfidential. Substantial evidence also supports the finding the real parties in interest did not waive any privilege by failing to more effectively secure the tape from other members of the household. They took reasonable steps to preserve the tape's confidentiality by secreting it in the closet.

■ At first glance, there appears to be some inconsistency between upholding the privilege and allowing the child to describe what she saw on the tape at trial. We were initially concerned with the failure to object at the preliminary hearing to the child's description of what she saw on the videotape. Indeed, in granting the motion to quash in superior court, the judge opined she may be cross-examined on the same at trial. That ruling is correct, however, because her description, as the recitation of an eavesdropper, is not privileged. Though there is a split of authority, California has adopted the view that the marital privilege does not apply to communications in the hands of a third party. (*People* v. *Peak, supra*, 66 Cal.App.2d 894, 903-904; *People* v. *Mitchell* (1923) 61 Cal.App. 569, 573 [215 P. 117]; Annot. (1984) 32 A.L.R.4th 1177, 1184-1186.)

### III

■ Petitioner next contends that the tape must nevertheless be produced to safeguard his constitutional rights to due process, confrontation and cross-examination. He relies principally on *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105], which addressed a similar question: "[W]hether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the

confidentiality of juvenile adjudications of delinquency." (*Id.,* at p. 309 [39 L.Ed.2d at pp. 349-350].) Recognizing the significance of the defendant's confrontation and cross-examination rights, the court balanced those constitutional rights against the state's interest in protecting the anonymity of juvenile offenders, and found the defendant's constitutional rights paramount. "Whatever temporary embarrassment might result to [the juvenile offender] or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." (*Id.,* at p. 319 [39 L.Ed.2d at p. 355].)

California cases have adopted the *Davis* approach in balancing statutory privileges against a defendant's constitutional right to confront and cross-examine his accusers. (*People* v. *Pack* (1987) 194 Cal.App.3d 1512 [240 Cal.Rptr. 367]; *People* v. *Caplan* (1987) 193 Cal.App.3d 543 [238 Cal.Rptr. 478]; *People* v. *Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139].) But the application of *Davis* is complicated by an additional factor present in this case: The real parties in interest asserted a constitutional right of privacy in the tape, independent of the statutory marital privilege. Because the trial court concluded the tape was privileged as a marital communication it did not reach the question of whether production of the tape would violate their constitutional right of privacy.

■ The federal Constitution provides a right to privacy in the marital relationship. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].) ■ The California Supreme Court recently acknowledged the analogous state right protecting marital relations and noted that ". . . California accords privacy the constitutional status of an 'inalienable right,' on a par with defending life and possessing property. [Citations.]" (*Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 841 [239 Cal.Rptr. 292, 740 P.2d 404].) ■ Without question, a videotape of sexual relations between a married couple invokes the constitutional right of privacy.

■ We are faced, then, with a different question than that posed in *Davis*. *Davis* balanced the defendant's federal constitutional rights against a statutory privilege. Here we must balance two competing federal constitutional rights, both of which are also "inalienable" state constitutional rights.

Moreover, a majority of the United States Supreme Court has recently confused the effect of *Davis* by analyzing a similar question in the context of the due process clause while expressly refraining from considering the defendant's right to confront and cross-examine. (*Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct 989].) Ritchie was charged with committing sex crimes against his daughter and sought to discover the

records of a protective service agency that investigated the alleged abuse against his daughter as well as another, earlier report he had abused his children. Relying on *Davis,* the Pennsylvania Supreme Court reversed Ritchie's conviction after his discovery request was denied and remanded the matter to afford Ritchie's attorney an opportunity to fully review the records and seek further relief. The Supreme Court concluded the state court erred in interpreting *Davis* "to mean that a statutory privilege cannot be maintained when a defendant asserts a need, prior to trial, for the protected information that might be used at trial to impeach or otherwise undermine a witness' testimony. . . . [¶] . . . The ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." (*Id.,* at pp. 52-53 [94 L.Ed.2d at p. 54].) *Ritchie* is distinct in that appellate review considered the question postconviction. The *Ritchie* court ordered the matter remanded for an in camera hearing, directing the trial judge to view the disputed records and determine whether they contained "information that probably would have changed the outcome of his trial." (*Id.,* at p. 58 [94 L.Ed.2d at p. 58].)

The Sixth District Court of Appeal recently adopted the *Ritchie* analysis and remanded a criminal case for an in camera hearing to determine whether the defendant was erroneously deprived of pretrial discovery in his burglary prosecution when the trial court denied him access to the psychiatric and medical records of the chief eyewitness. (*People* v. *Boyette* (1988) 201 Cal.App.3d 1527 [247 Cal.Rptr. 795].) In camera review was necessary to determine whether the defendant's constitutional rights to a fair trial overcame the psychotherapist-patient privilege. The *Boyette* court noted that statutory privilege encompassed the patient's constitutional right to privacy. (*Id.,* at p. 1532.)

The lessons from *Ritchie* and *Boyette* suggest we should intervene pretrial and order in camera review of the videotape to determine whether petitioner's right to due process outweighs the real parties in interest's constitutional rights of privacy and their statutory privilege not to disclose confidential marital communications. There is no way to balance those competing rights without viewing the tape itself.

We in no way intend to suggest the outcome of the court's review of the tape in camera. Yet the court should recognize its concomitant power to issue whatever protective orders are necessary should any further disclosure be compelled to preserve petitioner's rights to a fair trial. (See, e.g. *Vinson* v. *Superior Court, supra,* 43 Cal.3d 833, 846; *Millaud* v. *Superior Court* (1986) 182 Cal.App.3d 471, 476 [227 Cal.Rptr. 222].) As proposed at oral argument, the trial court might consider the appointment of a medical doctor to

review the tape, provide a written report to the parties, and be available to provide expert testimony. That procedure might be sufficient to preserve petitioner's due process rights without invading real parties' in interest privacy rights any more than necessary. But any such remedy should be considered only after the trial court has made a preliminary determination, after in camera review, that some disclosure is required.

The alternative writ is discharged. Let a peremptory writ of mandate issue directing the superior court to reverse its order quashing the subpoenas duces tecum. The real parties in interest shall comply with the subpoena duces tecum by producing the tape solely for in camera review by the court. The court shall maintain the real parties' in interest privacy rights unless and until, after in camera review and consistent with the views expressed in this opinion, it determines petitioner's rights to a fair trial compel discovery. The trial court is also directed to retain the original videotape, under seal, until any appellate remedies are exhausted.

Sonenshine, J. and Crosby, J, concurred.

The petition of real parties in interest for review by the Supreme Court was denied September 29, 1988.