[No. B037366. Second Dist., Div. Three. Feb. 28, 1989.]

JOE R. VELA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE et al., Real Parties in Interest.

[No. B038073. Second Dist., Div. Three. Feb. 28, 1989.]

CITY OF CULVER CITY, Petitioner, v.
THE MUNICIPAL COURT FOR THE CULVER JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Respondent;
JOHN PENGEY, Real Party in Interest.

COUNSEL

Abby Besser Klein and Ronald A. Ziff for Petitioner in No. B037366.

Joseph W. Pannone, City Attorney, Evelyn Keller and Carol A. Schwab, Deputy City Attorneys, for Real Parties in Interest in No. B037366 and for Petitioner in No. B038073.

No appearance for Respondents.

Brad M. Fox for Real Party in Interest in No. B038073.

OPINION

**CROSKEY, J.**—In these consolidated writ proceedings we are presented with the novel question of whether a city may shield from production in a criminal prosecution, under the attorney-client privilege, those statements made by its police officers to an investigating team organized by the city's police department to gather and preserve evidence for use by the city attorney in the defense of a possible future *civil action*. We conclude, under the facts here presented, that adherence to the statutory privilege protecting client privacy must give way to pretrial access when it deprives a defendant of his constitutional rights of confrontation and cross-examination. This is an issue which the trial court can resolve by use of an in camera hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

While these cases come to us on different procedural paths,[1] they both involve the effort by the City of Culver City (City) to protect statements

---

[1] In *Vela* v. *Superior Court,* No. B037366, petitioner is a defendant in a criminal action in which he is charged with attempted murder of two Culver City police officers. His efforts to obtain the statements of those two officers concerning the circumstances of the shooting incident from which the criminal charges arose were unsuccessful. He seeks here a writ of mandate to compel production of such statements. He also seeks all written reports authored by the special investigation team (SIT) plus all notes made by the investigative officers of the SIT. In *City of Culver City* v. *Municipal Court,* No. B038073, the City's claim of privilege was rejected at the preliminary hearing of the real party (John Pengey) who is also charged, in a totally unrelated incident, with the attempted murder of two Culver City police officers. This case also involves a shooting incident with the police and postarrest statements by the officers involved concerning the circumstances. Here, it is the City which seeks writ relief, asserting an attorney-client privilege to protect from disclosure the officers' statements which have been ordered produced by the court for an in camera review.

given by its police officers who were involved in shooting incidents with criminal defendants being prosecuted for their participation in those same events. The statements at issue were made to members of the SIT organized and controlled by the City's chief of police (Chief) for the expressly stated purpose of gathering "information for communication to and use by the City Attorney in defense of civil litigation only."

Under the direct personal control of the Chief, the SIT is staffed by specially selected officers who conduct investigations separate from and independent of the regular criminal and personnel investigations. These investigations are ordered on a case-by-case basis of those incidents where it is determined that civil litigation against the City, the police department or the officers involved is possible. The SIT conducts a private interview with the officer whose conduct is under investigation and advises the officer of his *Miranda* rights, if there is a possibility that criminal charges may be filed against the officer. If the officer refuses to answer, he is ordered to answer. If it appears there is either criminal culpability or grounds for disciplinary action the interview is terminated and a separate investigation is initiated. The report of the SIT is delivered directly to the Chief, who keeps it separate from all other police investigation reports of the same incident. The Chief retains the report until a claim for damages is filed, then sends it to the city attorney for use in City's defense of the civil action.

In No. B037366 (the Vela case), the defendant was held to answer in superior court on attempted murder charges and there made a motion for the discovery of certain documents.[2] In addition, he also served a subpena duces tecum on the City for the production of certain records.[3] On July 1,

---

The writ petition filed by the City seeks extraordinary relief directed to the order of the Municipal Court for the Culver Judicial District, dated October 6, 1988, rather than to the order of the superior court, dated October 11, 1988, which denied the City's petition to that court for a writ of mandate. In the interest of judicial economy and because we have consolidated this case with *Vela* v. *Superior Court,* which raises the same issue, we have determined to treat the petition presented to us as one directed to the denial order of the superior court. (See generally, Code Civ. Proc., § 904.1, subd. (a)(4); *Holman* v. *Superior Court* (1981) 29 Cal.3d 480 [174 Cal.Rptr. 506, 629 P.2d 14]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, §§ 209-210, at pp. 835-837.)

[2] "30. All written reports authored by the Culver City Shooting Team [i.e., the SIT], including but not limited to those produced by Lieutenant Mahoney and Sergeant Unoura as a result of this incident. [¶] . . . [¶] 34. Any and all reports authored by Officer Snyder of the Culver City Police Department as a result of this incident. [¶] 35. Any and all handwritten or other notes made by Officer Snyder or Lieutenant Mahoney or Sergeant Unoura as related to inquiries [30] and 34 above."

[3] "1. All written policy statements, notes, memorandum, policy manuals or other writings, describing the formation and function of the Special Investigation Team of the Culver City Police Dept.

"2. All written materials, written policy statements, intra-dept. memorandum and policy manuals describing the procedures to be followed by the Special Investigation Team members in their investigations.

1988, the trial court conducted a hearing on the discovery motion as well as the City's objections to the subpena.[4] At that hearing one of the two officers whom Vela was alleged to have shot at testified. He stated that at the outset of the interview by the SIT he was advised of his *"Miranda"* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974])and that he initially invoked them and refused to answer the SIT's questions. However, after he was advised that if he refused to speak there could be disciplinary action taken against him and he could possibly be fired from his job, he agreed to give the SIT a statement.

The court sustained the City's objection to the entirety of the subpena and denied Vela's motion for discovery of the material described in items nos. 30, 34 and 35. The court found that the attorney-client privilege was applicable and that the City, not the officer, was the holder of the privilege and that there had not been any waiver.

In No. B038073 (the Pengey case), subpenas duces tecum were served by the defendant John Pengey on both the City and its police department seeking the statements given to the SIT by the two police officers involved in that incident.[5] The City's objection to this request was resolved at a hearing in the municipal court where Pengey's preliminary hearing was scheduled. The court overruled the City's objections, denied the existence of an attorney-client privilege and ordered the requested documents produced.[6] The City's petition to the superior court for a writ of mandate was denied.

"3. All original paperwork derived as a result of the Special Investigation Team investigation involving Officers Hagen and Snyder where Joe Vela was named as a suspect.

"4. All original notes, reports, memorandum, tape-recordings and other evidence gathered from the interviews of Mark Hagen and Sue Snyder in the above-referenced case by the Special Investigation Team."

[4] At the hearing the City stated to the court that items nos. 1 and 2 in the subpena did not exist.

[5] "All written reports authored by the Culver City Police Department's 'Special Investigation Team' (SIT) pertaining to its 'special investigation' of an officer-involved shooting incident of Aug. 22, 1988 which led to defendant's arrest; all original notes, memoranda, and tape recordings gathered or generated from the SIT interviews of officers Ronald Perkins and Leon Moore; all oral, written, or taped statements made by officers Perkins & Moore to the SIT."

[6] The court in granting the motion for discovery stated: "The Court finds that there's a very serious question as to whether the attorney-client privilege exists here. You have the same department who's doing the criminal investigation, you have the same department that's doing the special investigation and it's just that I have a little trouble with that, so I have trouble whether there's a lawyer-client privilege to begin with. However, assuming that there is a lawyer-client privilege, and I don't accept that necessarily from the beginning, but even assuming there is, but from reading the cases it appears to me that the Constitutional rights of the defendant from the cases that I've read are paramount and the lawyer-client privilege must yield to the Constitutional rights of the defendant, the way I read the cases. That may be wrong, but that's the way I read it. Therefore, the request in the subpoena duces tecum will be granted. [¶] Counsel has agreed that there can be an in camera hearing. If the People wish we will have an in camera hearing, the Court will make note of what the Court feels

## Issue Presented

The resolution of these competing writ applications thus turns upon two rather straightforward questions. Is the City entitled to assert an attorney-client privilege over the investigative statements taken by the SIT from police officers who were percipient witnesses to alleged criminal activity? If so, are such privileged statements nonetheless subject to discovery by a criminal defendant where necessary to protect his constitutional rights of confrontation and cross-examination?

## Discussion

■ The attorney-client privilege "is based on grounds of public policy and is in furtherance of the proper and orderly administration of justice. [Citation.]" (*Nowell* v. *Superior Court* (1963) 223 Cal.App.2d 652, 657 [36 Cal.Rptr. 21, 2 A.L.R.3d 853].) The privilege is a statutory creation (Evid. Code, § 950 et seq.) and is an exception to the general rule requiring disclosure (Evid. Code, § 911). The objective of making a particular communication privileged is to encourage a client to disclose all relevant facts to his attorney by removing any apprehension that the confidential communications will later be disclosed to others. (*Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 71 [105 Cal.Rptr. 241]; *Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 506-507 [267 P.2d 1025] disapproved on another point in *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166, 176 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].)

■ However, this statutory privilege must be balanced against a criminal defendant's constitutional rights of confrontation and cross-examination. (*Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105].) While the state has an important interest in assuring the confidentiality of communications in civil actions between attorney and client, the need in a criminal proceeding to ascertain the truth through cross-examination may be more compelling. (*People* v. *Reber* (1986) 177 Cal.App.3d 523, 531 [223 Cal.Rptr. 139].)

■ The exercise of the power of the trial court to provide for discovery in criminal cases is consistent with " 'the fundamental proposition that [the

---

should be weighed in this case with emphasis if there is [*sic*] any exonerating or exculpatory statements or inconsistencies—An inconsistency would be hard for the Court to know just reading the statements, but if there are any of those things that the Court feels should be disclosed by method of discovery that it should be discoverable by the Defendant. Now that I feel we can do that and determine exactly that in an in camera hearing, should the People want to do that. [¶] That also will be subject to a protective order that those items and those statements relative to the events of the particular offense, those facts should be subjected to a protective order where those statements will be given only to the defense counsel and he's not to give that to any other person but to use it in the defense of the defendant that he is representing."

accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.'" (*People* v. *Memro* (1985) 38 Cal.3d 658, 677 [214 Cal.Rptr. 832, 700 P.2d 446], quoting *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305].) An accused is entitled to any " 'pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense. . . .*' (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L. Rev. 228, 244; italics added.)" (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], disapproved on another point in *People* v. *Haskett* (1982) 30 Cal.3d 841, 859, fn. 7 [180 Cal.Rptr. 640, 640 P.2d 776]; accord *People* v. *Memro, supra,* 38 Cal.3d at p. 677; *People* v. *Reber, supra,* 177 Cal.App.3d at p. 531.)

As our Supreme Court has recently reaffirmed, " '[a]bsent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits.'" (*People* v. *Memro, supra,* 38 Cal.3d at p. 677, quoting *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].) ■ As the court stated in *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388, 402 [153 Cal.Rptr. 608], "The judiciary has a solemn obligation to insure that the constitutional right of an accused to a fair trial is realized. If that right would be thwarted by enforcement of a statute, the statute . . . must yield."

■ In *Gonzales* v. *Municipal Court* (1977) 67 Cal.App.3d 111, 117-121 [136 Cal.Rptr. 475], the court held that when an officer makes statements to an internal investigator knowing the statements will be transmitted to the City, but also knowing the statements may be the basis for discipline, the statements are not privileged as there can be no showing of intent to keep the information confidential under the attorney-client privilege. A police officer *on his own behalf* can not successfully invoke the attorney-client privilege absent a showing his statements were intended to be confidential within the attorney-client privilege. However, in *Gonzales* the issue presented involved the availability of the privilege to the individual officer not the political entity which employed him.

■ In the present case it is the City, not the individual officer, which is seeking to claim the attorney-client privilege based on possible use in a not-yet-filed civil action. The City's contention is based primarily on *People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841 [41 Cal.Rptr. 303], in which the appraisal report of a public works

employee was found protected under the attorney-client privilege when the dominant purpose of the public agency was to prepare for litigation in an eminent domain proceeding.

 It is generally true that civil discovery procedure does not govern a criminal prosecution (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 536); but it is from civil discovery rules that the "dominant purpose" doctrine has come (*Holm* v. *Superior Court, supra,* 42 Cal.2d 500). In *Holm,* plaintiff, in a negligence action against both a bus company and the bus driver, sought discovery of a statement the driver gave to an agent of the bus company which was to be forwarded to the company's attorney for use in possible litigation. The court sustained the bus company's claim of privilege and stated that, "If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates." *(Holm, supra,* at p. 507.)

 However, when the client is a corporation, the problem relating to the extent of the attorney-client privilege becomes complex because a corporation can speak only through an officer, employee, or some other natural person. Recognizing this problem, the court in *D.I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 733 [36 Cal.Rptr. 468, 388 P.2d 700], observed that "*Holm* failed to state *whose* purpose was involved. Is it the purpose of the employee, or that of the corporation?" (Italics in original.)

In clarification of this issue, *Chadbourne* set forth certain basic principles to be applied, among which are the following: "1. When the employee of a defendant corporation is also a defendant in his own right (or is a person who may be charged with liability), his statement regarding the facts with which he or his employer may be charged, obtained by a representative of the employer and delivered to an attorney who represents (or will represent) either or both of them, is entitled to the attorney-client privilege on the same basis as it would be entitled thereto if the employer-employee relationship did not exist; [¶] . . . [¶] 4. Where the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his statement or report is that of the employer; [¶] 5. If, in the case of the employee last mentioned, the employer requires (by standing rule or otherwise) that the employee make a report, the privilege of that report is to be determined by the employer's purpose in requiring the same; that is to say, if the employer directs the making of the report for confidential transmittal to its attorney, the communication may be privileged; [¶] 6. When the corporate employer

has more than one purpose in directing such an employee[7] to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived." (*D.I. Chadbourne, supra,* 60 Cal.2d at pp. 736-737.)

■ Here, it appears that the SIT was created specifically for the purpose of investigating incidents or occurrences which could lead to the possible institution of a civil action against the City. Members of the SIT assemble information only for use in defense of the actions of the police department in the event there is a civil lawsuit filed against the City. The SIT's investigation is totally separate from the investigations of citizen complaints, personnel complaints or the criminal investigation for the underlying charges. The results of the investigation are delivered to the Chief for transmission to the city attorney who acts as the attorney for the police department. None of the SIT's work product is shared with other investigative efforts of the police department, i.e., with the regular criminal investigation or with any personnel investigation that may be conducted. The SIT conducts the interview with the officer involved in isolation from others and advises the officer of his *Miranda* rights, if there is a possibility that criminal charges may be filed. If the officer refuses to answer questions, he is ordered to answer the questions by the SIT; however, if it appears there is either criminal culpability or grounds for disciplinary action, the SIT immediately terminates the interview and a separate investigation is then conducted as appropriate. Statements made by the officer to the SIT never became part of the officer's personnel file and the report of the SIT is not used for personnel decisions or made part of the officer's personnel file.

Thus, it appears that any statements made to the SIT were primarily for the purpose of protecting the City in future civil litigation and were intended to be confidential within the attorney-client privilege. If the SIT's report served any other purpose, it was minimal. We therefore conclude that the City is the holder of an attorney-client privilege with respect to the SIT reports and, absent any constitutional circumstances compelling a contrary result, may assert such privilege to prevent disclosure thereof.

However, these consolidated cases may well present just such compelling circumstances. Here, the City seeks to protect from disclosure written statements of the very police officers whose trial testimony will be necessary to prove the criminal charges filed against the defendants. In such circumstances adherence to a statutory attorney-client privilege must give way to pretrial access when it would deprive a defendant of his constitutional

---

[7] " 'Such' refers to the situation '[w]here the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business. . . .' *(Chadbourne* at p. 737.)" (*Gonzales* v. *Municipal Court, supra,* 67 Cal.App.3d at p. 120, fn. 9.)

rights of confrontation and cross-examination. Whether this is in fact the case is an issue which must be resolved by the trial court. To preserve the City's claim of privilege pending such resolution, declarations and other supporting evidence may be submitted to the trial court, at the time of any discovery motion or hearing upon a subpena duces tecum, for in camera examination. The court may then decide if the claim of attorney-client confidentiality should be sustained over the criminal defendant's discovery request and, if so, to what extent. (Cf. *Rubio* v. *Superior Court* (1988) 202 Cal.App.3d 1343, 1350 [249 Cal.Rptr. 419]; *People* v. *Boyette* (1988) 201 Cal.App.3d 1527, 1532 [247 Cal.Rptr. 795]; *People* v. *Reber, supra,* 177 Cal.App.3d at p. 532.)

Conceivably, parts of the officer's statement may not be relevant to the underlying criminal action, and the trial court should, in light of all the facts and circumstances, initially decide how much, if any, must remain confidential. Defendant's entitlement to discovery is not absolute. The attorney-client privilege may be overridden only if, and to the extent, necessary to ensure defendant's constitutional rights of confrontation and cross-examination. Thus, the trial court must weigh defendant's constitutionally based need against the statutory privilege claimed by City and determine which privileged matters, if any, are essential to ensure defendant's right of confrontation and access to matters reasonably required to permit a full and fair cross-examination. The trial court must also create a record of the in camera hearing, and the findings made therein, adequate to permit appellate review of its ruling.

To protect City's rights in any future civil litigation it may also be necessary for the trial court to permit the requested discovery subject to an appropriate protective order limiting use of the material to the pending criminal prosecution and preventing its use in any other proceeding, including any current or future civil action instituted against the City. (Cf. *Millaud* v. *Superior Court* (1986) 182 Cal.App.3d 471, 476 [227 Cal.Rptr. 222]; *Rubio* v. *Superior Court, supra,* 202 Cal.App.3d at p. 1350.) The trial court has full discretionary authority to fashion a proper protective order.

Disposition

1. *Joe R. Vela Petition (Case No. B037366)*

The alternative writ is discharged. A peremptory writ of mandate shall issue directing the Superior Court of Los Angeles County to reverse its order of July 1, 1988, denying Vela's motion for discovery and quashing the subpoena duces tecum. The real parties in interest shall comply with the subpoena duces tecum by producing the requested information solely for in camera review by the trial court. The court shall protect and sustain the real parties' claim of privilege unless and until, after in camera review, it deter-

mines Vela's rights to a fair trial compel discovery. The trial court is also directed to issue a protective order, if it appears appropriate to prevent the use of the requested materials in any but the pending criminal proceeding.

2. *City of Culver City Petition (Case No. B038073)*

The alternative writ is discharged. A peremptory writ of mandate shall issue to the Superior Court of Los Angeles County directing it to vacate its order of October 11, 1988, denying mandate and to issue a new and different order to the Municipal Court for the Culver Judicial District directing it to modify its discovery order of October 6, 1988, by ordering City to release the requested information solely for in camera review by the court. The said municipal court shall further be directed (1) to protect and sustain the City's claim of privilege unless and until, after in camera review, it determines Pengey's rights to a fair trial compel discovery and (2) to issue a protective order, if it appears appropriate, to prevent the use of the requested materials in any but the pending criminal proceeding.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied March 24, 1989, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme court was denied June 7, 1989.