Filed 9/8/15  P. v. Garcia CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B253462 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA372841) |
| JIMMY GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gail Ruderman Feuer, Judge.  Affirmed.

Kelly Cronin Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, William H. Shin and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jimmy Garcia (appellant) was convicted by a jury of resisting an executive officer. This is his second appeal from that judgment. Previously, we remanded for an in-camera hearing to inspect the personnel records of arresting officers Michael Aguilar and Daniel Diaz in accordance with *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (case No. B229383) (the prior opinion).[1] In this appeal, appellant first seeks our independent review of the *Pitchess* hearing where the trial court ordered disclosure of an Internal Affairs investigation into the use of force during appellant's arrest in the instant case (the *Pitchess* evidence). Second, appellant contends the judgment should be reversed because: (1) the trial court's denial of his motion for a new trial based on newly discovered *Pitchess* evidence violated his rights to due process and a fair trial and (2) the People failed to produce the *Pitchess* evidence before trial, which violated *Brady v. Maryland* (1963) 373 U.S. 83. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol in Echo Park at about 12:23 a.m. on June 23, 2010, Los Angeles Police Department (L.A.P.D.) Officers Aguilar and Diaz heard the sound of a woman screaming for help. Upon investigation, they discovered the appellant appearing to drag Sonia M. towards the lake; Victor Recinos, who possessed a hammer in his pocket, was standing behind the appellant. The officers ordered everyone down to the ground. Sonia and Recinos immediately complied; the appellant did not. The appellant resisted the officers' efforts to handcuff him and ignored multiple warnings to comply or be tased. The appellant was tased several times. When Sergeant Eduardo Ceberio arrived on the scene, he tried to assist by holding the appellant's legs. After the appellant kicked Sergeant Ceberio a few times, he ordered Aguilar to tase the appellant again. During the struggle, the appellant was tased between four and seven times.

---

[1]     We previously granted defendant's request to take judicial notice of the record in the prior appeal.

2

The defense version was starkly different.  Sonia was the appellant's girlfriend and the two had gone to the park together that night, along with acquaintance Recinos.  Sonia and the appellant played hide-and-seek.  During this play, Sonia screamed for help in jest.  The two police officers who arrived shortly thereafter mistook this for a crime in progress and ordered everyone onto the ground.  The appellant and Sonia tried to explain that a foot injury appellant suffered prevented him from complying, but the officers would not listen.  The appellant was tased multiple times, even after he was compliant on the ground.

1.    *Pretrial Discovery*

The arrest report identified Sergeant Susan Kapoh as the person in charge of conducting a use of force investigation.  In addition to the *Pitchess* motion, the appellant filed a *Vela* motion seeking all statements made by Aguilar, Diaz, and Sergeants Ceberio and Kapoh "detailing their participation in or observations of the events which transpired in this case," including any statements given to Internal Affairs.[2]  Although the record does not include an express ruling on the *Vela* motion, at a pretrial hearing on September 28, 2010, defense counsel stated he had received the use of force report.[3]

---

[2]    See *Vela v. Superior Court* (1989) 208 Cal.App.3d 141, 144 [city cannot use attorney-client privilege to bar criminal defendants from seeking pretrial discovery of "statements made by its police officers to an investigating team organized by the city's police department to gather and preserve evidence for use by the city attorney in the defense of a possible future civil action"]; see also *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 637 [statements of witnesses to the crime are discoverable notwithstanding that they were obtained as the result of an internal affairs investigation and placed in an officer's personnel file].

[3]    There was some discussion about the report missing pages one through three, which identified the author of the report (already known to be Kapoh from the arrest report).  Since there were no further proceedings relating to pretrial production of the use of force report, we presume the missing pages were provided.

3

2.    *Summary of Trial Testimony*

Aguilar, Diaz and Sergeant Ceberio were questioned extensively about the events leading up to the appellant's tasing and the number of times he was tased that night. We focus on the pertinent testimonies of Sergeants Ceberio and Kapoh and the testimonies of Aguilar and Diaz on the issue of the use of force investigation.

a.    Sergeant Ceberio's Testimony on the Incident

Sergeant Ceberio was the first backup officer on the scene. Upon arrival, he saw Aguilar and Diaz struggling with the appellant; the appellant was face down on the ground. Diaz was straddling the appellant, but had his weight on his own feet, not on the appellant's back. Aguilar was to the side, trying to grab the appellant's arm. Sergeant Ceberio tried to assist by grabbing the appellant's legs, but after the appellant kicked him a few times, Sergeant Ceberio ordered Aguilar to tase the appellant. At the time he gave this order, Sergeant Ceberio did not know how many times the appellant had already been tased. Sergeant Ceberio personally observed the appellant tased once.

b.    Sergeant Kapoh's Testimony on the Use of Force Investigation

Sergeant Kapoh testified she was the officer in charge of the use of force investigation. The taser log indicated Aguilar's taser was discharged seven times. Sergeant Kapoh interviewed Officers Diaz and Aguilar and witness Recinos at the scene; Sonia was interviewed by Sergeant Ceberio. Diaz told Sergeant Kapoh he thought he saw the appellant punched by an L.A.P.D. officer, but in a follow-up interview Diaz said "he wasn't sure that's exactly what he saw."

c.    Aguilar and Diaz's Testimony on the Use of Force Investigation

Aguilar and Diaz each testified that the use of force investigation in this case was the only time either had been investigated for use of force. In connection with that

4

investigation, both were interviewed by Sergeant Kapoh. Regarding his interview, Diaz engaged in the following colloquy with defense counsel:

"[DEFENSE COUNSEL]: You were interviewed by your sergeant in connection with this incident; correct?
[THE WITNESS]: Correct, Ma'am.
[DEFENSE COUNSEL]: And you gave a statement regarding your use of force to your sergeant; is that correct?
[THE WITNESS]: Yes, Ma'am.
[DEFENSE COUNSEL]: And in that statement, did you indicate to your sergeant that you saw an L.A.P.D. officer punch [defendant]?
[THE WITNESS]: No, Ma'am.
[DEFENSE COUNSEL]: You didn't tell your sergeant that?
[THE WITNESS]: I did not.
[DEFENSE COUNSEL]: Did you tell your sergeant that you told the officer that it's okay?
[THE WITNESS]: That I told the officer that it's okay what?
[DEFENSE COUNSEL]: That 'it's okay. We're okay. You don't need to keep hitting him.'?
[THE WITNESS]: I didn't tell him that.
[DEFENSE COUNSEL]: No? Did you tell your sergeant that the L.A.P.D. officer then stopped and walked away?
[THE WITNESS]: I didn't tell her that he stopped nor walked away, no, because I never saw anything. So I could not say he stopped whatever he was doing. "

Diaz clarified he told Sergeant Kapoh while he was handcuffing the appellant, he saw other L.A.P.D. officers in his peripheral vision, and said to them, "I got it. I got it."

3.    *Post-Remand Proceedings and the* Pitchess *Evidence*

Although Judge Alex Ricciardulli presided over the trial, Judge Gail Feuer handled the post-remand proceedings. As directed in our remand, Judge Feuer conducted an in-camera *Pitchess* hearing on December 3, 2012. One of the three documents produced was an Internal Affairs complaint, case No. 11IA001, based on the instant case. The custodian of records explained that the Internal Affairs complaint was generated because during the use of force investigation, "the officers reported to their supervisor that L.A.P.D. may have used excessive force. There were incomplete statements as far as

5

was it excessive use of force or were they misleading. The supervisor was saying that they saw it happen. So there was a whole conflict about that. So that's what this is about. This is an internally generated IA complaint."

The custodian stated that the investigation which resulted in complaint No. 11IA001 was completed just the week before the *Pitchess* hearing. Presumably referring to Sergeant Kapoh's use of force report and related materials turned over in pretrial discovery, the trial court asked whether the complaint in case No. 11IA001 included the same information that had been included in the use of force investigation report; the custodian affirmed that it did.

The trial court ordered disclosure of the complaint in case No. 11IA001, observing, "I assume it's duplicative, but in an abundance of caution, since there is an investigation regarding dishonesty, I will order this information be disclosed. Since information was previously disclosed, the protective order, was previously entered, so that protective order will apply to this information as well." In addition to the complaint, the names, addresses and telephone numbers of the complaining witness (i.e. the appellant) and all other witnesses in case No. 11IA001 were ordered disclosed to the appellant, as well as information about any discipline.

The People complied with the order. On February 27, 2013, the trial court granted the appellant's request for additional time to file a supplemental *Pitchess* motion. The record does not include a copy of that motion, but from the colloquy at a hearing on March 28, 2013, it appears Sergeants Ceberio and Kapoh had not been cooperative with the defense investigator and the supplemental *Pitchess* motion sought any statements they made in the course of the investigation leading to the complaint in case No. 11IA001. The trial court ordered those statements turned over to the appellant (the witness statements). It is unclear from the record whether the witness statements were written statements, transcripts of recorded interviews or something else.

4.      *The New Trial Motion*

The appellant moved for a new trial based on Sergeants Ceberio and Kapoh's witness statements, which the appellant characterized as newly discovered evidence.[4] The motion was not supported by any declarations and copies of the witness statements (in whatever form) were not attached, but the relevant language from each was described in the motion. According to the motion, Sergeant Ceberio said in his statement that the appellant was tased two or three times. In her statement, Sergeant Kapoh said Diaz "first stated that an unknown LAPD male officer had punched the suspect several times after he was already controlled. However, he started to 'change up his story' after a few days. 'He rationalized other circumstances that mitigated his actions may not be excessive.' " The appellant argued Sergeant Ceberio's statement was relevant to show his lack of credibility because it conflicted with his trial testimony. The appellant did not explain the impeachment value of Sergeant Kapoh's witness statement, but we infer the appellant believes it would reflect negatively on Diaz's credibility regarding whether he saw an officer punch the appellant.

The People countered that the witness statements were not "newly discovered" because they were duplicative of the use of force investigation material which the appellant obtained pretrial. The witnesses were questioned at length during the trial on the same topic. Moreover, the prosecutor argued there was no reasonable probability of a more favorable result as neither piece of evidence controverted that the appellant resisted arrest before any force was used.

Following a hearing on November 7, 2013, the trial court denied the appellant's new trial motion. The trial court found no significant inconsistency between Sergeant Ceberio's witness statement and his trial testimony, or the testimony of Aguilar or Diaz.

---

[4]     The new trial motion stated "[t]he *witnesses* only became known to the defense through discovery provided as a result of the" post-remand *Pitchess* hearing, the statements were relevant for impeachment purposes and there was a reasonable probability the outcome of the trial would have been different if the statements had been available at trial. (Italics added.) Since both Ceberio and Kapoh testified at the trial, this was not true.

The trial court further found Sergeant Kapoh's statement of little significance since Diaz and Sergeant Kapoh were extensively questioned at trial about the same general subject.

The appellant timely appealed.

## DISCUSSION

### A. *Independent Review*

Our independent review of the sealed Reporter's Transcript of the in-camera *Pitchess* hearing on December 3, 2012 shows the trial court properly exercised its discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) The custodian of records testified the files of the Department of Personnel, the Department of Internal Affairs and the Citizen's Investigation files were reviewed for responsive documents. Although none of the three documents brought by the custodian of records are part of the appellate record, the on-the-record descriptions of those documents are sufficient to permit appellate review. The trial court properly found two of the three documents were not discoverable.

### B. *Denial of Defendant's New Trial Motion*

The appellant contends the trial court's denial of his new trial motion violated his rights to due process and a fair trial. He posits the factors articulated in *People v. Sutton* (1887) 73 Cal. 243, 247-248, were met. More specifically, the appellant argues the witness statements were "newly discovered" because they were produced only after the judgment was conditionally reversed for a *Pitchess* hearing. The evidence was material because they were inconsistent with the witnesses' trial testimony. Lastly, there was a reasonable probability a jury informed of this evidence would reach a more favorable result on the resisting charge.

8

### 1. Standard of Review

A trial court's denial of a motion for a new trial will not be disturbed absent a "clear showing of a manifest and unmistakable abuse of discretion. [Citations.]" (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151; *People v. Hall* (2010) 187 Cal.App.4th 282, 298 ["A trial court's determination of a motion for a new trial ' " 'will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " ' [Citation.]"].) If supported by the evidence, we must accept the trial court's credibility determinations and findings of fact. (*People v. Verdugo* (2010) 50 Cal.4th 263, 308.)

This rule applies even if the judge who presided over the motion for a new trial is not the trial judge. In *Perry v. Fowler* (1951) 102 Cal.App.2d 808, 812, the court noted the "long established rule in this state that a trial judge will not be reversed in his ruling on a motion for a new trial, unless it is affirmatively shown or manifestly appears that he has abused the sound discretion confided to him. [¶] Where a trial judge's ruling on a motion for a new trial is made, as here, after a prior trial before a different judge and jury it would seem that generally speaking the same basic rule must be applied."

In the lower court, the appellant relied on Penal Code section 1181, subdivision (8) as ground for a new trial.[5] "In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and

---

[5]     California Penal Code section 1181, subdivision (8) provides as follows, "When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable."

produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' [Citations.]" ( *People v. Delgado* (1993) 5 Cal.4th 312, 328.) "In addition, 'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' [Citation.]" (*Id.* at p. 329.)

In ruling on the new trial motion, the trial court focused on: (1) whether the evidence was "newly" discovered, (2) whether the evidence was material, and (3) whether it was reasonably probable a more favorable result would occur had the evidence been introduced at the original trial. It found the evidence "new" only to the extent Sergeant Kapoh would possibly testify Diaz changed his story during the use of force investigation. The trial court found neither statements material and concluded "it does not seem to me it would be probable there would be a different result at trial." The trial court did not abuse its discretion in denying the motion.

### a.      The Evidence Was Not Newly Discovered

The appellant argues he "could not have discovered the [witness statements] at trial, because [the evidence] was in the confidential personnel files of the officers whose statements were provided after this Court remanded for discovery of those files."

At the post-remand *Pitchess* hearing, the custodian of records testified that the Internal Affairs complaint No. 1IA001 contained duplicative materials disclosed pretrial, presumably referring to Sergeant Kapoh's use of force investigation report. The appellant's new trial motion was not supported by an affidavit stating the witness statements contained evidence which was not included in Sergeant Kapoh's report. On the contrary, the questions posed to the witnesses at trial show that the appellant was well aware of the statements made by these officers during the use of force investigation.

Because the appellant has failed to show that the witness statements turned over post-remand were different from the statements turned over in pretrial discovery, the appellant has failed to show the witness statements are "newly discovered evidence."

### b.     The Evidence Was Not Material

Sergeant Ceberio's statement that the appellant was tased two or three times is not materially different from his trial testimony that he observed the appellant tased one time, and did not know how many times the appellant was tased before he arrived on the scene. It is reasonable to infer Sergeant Ceberio's witness statement refers to his understanding of the total number of times the appellant was tased during the incident while his trial testimony expressly related only to what he actually observed.

Likewise, Sergeant Kapoh's witness statement that Diaz told her the appellant was punched by an L.A.P.D. officer, but Diaz later backed off that statement, was not materially different from Sergeant Kapoh's trial testimony that Diaz told her he thought he saw the appellant being struck by another police officer, but later told her he was not sure of exactly what he saw.

### c.     Prejudice Was Not Shown

Evidence from complaint No. 1IA001 would show:  (1) Sergeant Ceberio previously stated the appellant was tased two to three times, and (2) Diaz minimized his initial comment that he observed an L.A.P.D. officer punch the appellant.  This is to be compared against the evidence actually presented.

First, Sergeant Ceberio testified he did not know how many times the appellant was tased before arriving on the scene.  Second, Sergeant Kapoh testified the taser was discharged seven times.  Third, Sergeant Kapoh testified Diaz told her the appellant was struck by an L.A.P.D. officer but later retracted saying he was not sure of what he saw. When the information obtained from the *Pitchess* discovery is compared to the evidence adduced in the trial, it is readily apparent the trial court did not abuse its discretion by denying the new trial motion.  While the *Pitchess* discovery may be slightly different from what was actually introduced at the trial, the difference is only minimal.  It is not reasonably probable a more favorable result would occur had the *Pitchess* discovery been presented.

11

## 2. *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*)

The appellant contends the People's failure to disclose the witness statements violated *Brady*. "In *Brady*, the United States Supreme Court held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' [Citation.] The high court has extended the prosecutor's duty to encompass the disclosure of material evidence, even if the defense made no request concerning the evidence. [Citation.] The duty encompasses impeachment evidence as well as exculpatory evidence." (*People v. Hoyos* (2007) 41 Cal.4th 872, 917-918, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643.) "In the case of impeachment evidence, materiality requires more than a showing that 'using the suppressed evidence to discredit a witness's testimony "might have changed the outcome of the trial." [Citation.]' [Citation.] Rather, the evidence will be held to be material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [Citation.]" (*People v. Lucas* (2014) 60 Cal.4th 153, 274, disapproved on another point in *People v. Romero* (2015) __ Cal.App.4th__ (2015 WL 5047523).)

Here, the appellant has failed to show the prosecution suppressed any favorable evidence, much less that disclosure would have resulted in a more favorable result at trial. First, as we have already discussed, Sergeant Kapoh's use of force investigation report was produced in pretrial discovery and there is nothing in the record to show how, if at all, the witness statements produced post-remand materially differed from the pretrial discovery. Second, the witness statements were not materially inconsistent with the trial testimony of those witnesses. Third, even assuming some slight inconsistency in the witnesses' statements and their trial testimony, the appellant has not shown there is a reasonable probability the result of the trial would have been different if the witness statements had been disclosed to the defense prior to trial. He has failed to show any *Brady* error.

12

In *People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696 (*Johnson*), our Supreme Court recently held prosecutors, as well as defendants, must comply with the *Pitchess* procedures if they seek information from a police officer's confidential personnel records. Thus, if informed by the police agency of the existence of *Brady* material in police personnel files, prosecutors satisfy their *Brady* obligation by notifying the defense of that fact but need not conduct the *Pitchess* discovery themselves. (*Id.* at p. 715.) Under *Johnson*, based on the evidence the prosecutor disclosed in pretrial discovery, here, no *Brady* error occurred.

## DISPOSITION

The judgment is affirmed.


OHTA, J.[*]

WE CONCUR:


FLIER, ACTING P. J.


GRIMES, J .

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.